## SCHUSLER v. THE STATE.

MURDER.—CIRCUMSTANTIAL EVIDENCE.—To sustain a conviction for murder upon circumstantial evidence, the facts proved must be susceptible of explanation upon no reasonable hypothesis consistent with the innocence

of the accused. It is not enough that the mystery of the crime cannot be solved from the evidence, except upon the supposition of the defendant's guilt.

SAME.—The evidence, which is reviewed by the court, was held not to justify a verdict of guilty.

APPEAL from the *Warrick* Circuit Court.

RAY, J.—This was an indictment for murder in the first degree. The appellant was convicted and sentenced to imprisonment for life. It is claimed that the evidence, as contained in the bill of exceptions, does not sustain the finding of the jury. That the deceased, one *John Frederick*, came to his death by violence is conclusively shown; that the death was caused by the appellant is attempted to be established by circumstantial evidence. To sustain such a conviction, the facts proved must be susceptible of explanation upon no reasonable hypothesis consistent with the innocence of the person charged. Although the mysterious crime cannot be solved from the evidence, except upon the supposition of the defendant's guilt, still a conviction cannot follow. The life or liberty of a person cannot be legaly sacrificed on the ground that only by regarding him as guilty an explanation is afforded of the perpetration of a proved offense. The circumstances surrounding the person charged must point beyond any other reasonable solution to his guilt.

The evidence, as stated in the record, is that *Frederick* was left in his grocery store, at about ten o'clock at night, by three persons, who testified as witnesses on the trial; that they went west from his store, and had proceeded some eighty or ninety yards when they heard a cry of murder, and returning instantly, found *Frederick* lying on the pavement in front of his store, insensible from the effect of a blow on the back part of his head, which had crushed his skull. *Frederick* seemed to have been in the act of closing his grocery when he was struck. A stick, with which the wound appeared to have been inflicted, was found near the body. From the effect of the blow *Frederick* died

during the week, having remained insensible during that time. Some seventy to seventy-five feet east of the store an alley ran to the river bank, and on this river bank the defendant resided. In this alley were found the fresh marks of footsteps, about three feet apart, which were identified as having been made by the boots worn by the defendant. There were also marks of other footsteps, and the alley was a common highway to the river, and was of sufficient width for wagons to travel through. It was also in evidence that the defendant had, from some cause not explained, cherished ill will towards the deceased, and up to a period of one or two months before the killing occurred, had made threats that he would injure him; that the morning after the assault, on being informed of its occurrence, the defendant remarked, "From what you told me, *Frederick's* life license and revenue license went out about the same time," stating that *Adams* had told him the revenue license had expired. It was attempted to be shown that *Adams* had so stated during the conversation in the grocery the evening before, and, by such proof, to create the inference that the defendant had been concealed near the premises and had overheard the conversation. But *Adams* testified that the license did not expire for some nine months, and that it had been issued by him to the defendant, and that he heard no conversation on the subject at the grocery. Another witness stated that three or four days after *Frederick* was killed, the defendant came into a shop where he was, and the witness remarked, "There is the man who knocked *Frederick* in the head, to which the defendant answered, "A man told me I ought to have hit him one lick more." This was certainly a singular response, if made by a man guilty of the crime, and feeling himself thus publicly charged with its commission.

On the part of the defendant, it was in proof that he had frequently been with the deceased in his grocery, and the day before the assault, had, in company with another person, made purchases there. On the night in question, the

defendant had been at a meeting, and had gone from there to a barber shop and been shaved, and had reached his boarding house at nine o'clock. He was heard to enter the house at that hour by his landlord, who spoke to him, and who did not hear him leave the house again. A lady was at the window of the house opposite and saw the defendant enter the door, and did not see him come out, although she remained at the window until a quarter before ten o'clock. What distance it is from the boarding house of the defendant to the grocery, we are not informed, and it does not appear from the evidence in the record, therefore, that it would have been even possible for the defendant to have committed the crime. We are also led to believe, from the testimony, that the alley through which the defendant passed, and where the marks of his footsteps were found, was upon his direct course for his home, and therefore no presumption could be drawn against him from that fact, as it was perfectly consistent with his innocence. Indeed the evidence so entirely fails to produce a reasonable certainty of the defendant's guilt, and appears in the bill of exceptions to have been taken down in so meagre a manner, that we are forced to conclude that we have not the full evidence given upon the trial. Inasmuch, however, as the bill of exceptions does not, upon its face, furnish absolute evidence of any express omissions of testimony, and as the certificate of its correctness is in the required form, we have felt it our duty to examine it carefully. The result of such examination is, that no sufficient evidence is before us to sustain the conviction.

The judgment is reversed, and the cause remanded for a new trial, the defendant to be returned to the jail of *Warrick* county, &c.

*B. Hynes,* for appellant.

*D. E. Williamson,* Attorney General, for the State.