## WRIGHT *v.* BERTIAUX.

[No. 19,801.   Filed April 1, 1903.   Rehearing denied June 18, 1903.]

MASTER AND SERVANT.—*Mill Held by Trustee.—Personal Injury of Employe.—Evidence.*—In an action for personal injuries sustained by plaintiff while working in a mill, the defendant filed a plea in abatement and the evidence introduced in support thereof showed that the mill was bid off and conveyed by the receiver thereof to defendant in trust for others; that defendant executed to the owners a declaration of trust, and thereafter signed and acknowledged a deed conveying the property in pursuance to the trust, but the deed was for some reason unsatisfactory, and he afterwards executed another deed to the same parties. Pending the conveyances, and at the time of plaintiff's injury, the mill was operated in defendant's name, without his knowledge or consent. *Held,* that the evidence failed to show that defendant was the operator of the mill, or liable in any way for the negligence of those engaged in its operations.

From Madison Circuit Court; *W. O. Barnard,* Special Judge.

Action by Firman Bertiaux against Thomas Wright. From a judgment for plaintiff, defendant appeals. *Reversed.*

*J. W. Lovett, F. E. Holloway* and *Seddon & Blair*, for appellant.

*W. A. Kittinger, W. S. Diven* and *J. E. Hall*, for appellee.

HADLEY, C. J.—Appellee sued appellant for negligently causing his physical injury while, it is alleged, the former was at work in the latter's steel-mill. Appellant first appeared specially and moved the court to quash the summons and return, which motion was overruled. Continuing his special appearance he then filed his verified plea in abatement setting up, in effect, that he (appellant) was on the 25th day of July, 1899, for ten years before, and ever since has been, a resident of the state of Missouri; that he was not at the time of the accident complained of the owner of the factory and plant at Alexandria, Indiana, where said accident occurred, nor was he engaged in operating the same, nor had he any interest in the operation and management of said factory and plant; that Thomas R. Aiken, upon whom the only summons was served in this action, was not his agent or clerk, nor his employe, nor had appellant an office or agency in the county of Madison, Indiana, for the transaction of any business whatever since and before said time. On the issue tendered by the plea in abatement there was a trial and finding for appellee; and, over appellant's motion for a new trial of the issue, judgment was rendered against him to plead over. Issues formed on the complaint were submitted to the jury, which resulted in a verdict and judgment for appellee. Appellant's motion for a new trial of the merits was also overruled.

. The appeal presents some important questions, which have been ably discussed, but in the view we have been constrained to take of the case, we deem it profitable to con-

sider only the one which relates to the liability of appellant for the alleged wrongs suffered by appellee. The question involves the inquiry, was appellant the operator of the mill, or liable in any way for the negligence of those engaged in its operation? The record discloses that the evidence produced by appellant in support of his pleas in abatement was, without objection, introduced and read to the jury by appellee in support of his complaint; and, since the issue joined by the answer to the merits and that joined by the plea in abatement present the same question with respect to the sufficiency of the evidence to support each finding and judgment, we will consider them together.

The facts disclosed by the record are as follows: The Union Steel Company, a corporation, owned the steel-mill at Alexandria, Indiana, where the accident happened. Charles A. McNair, a resident of St. Louis, Missouri, was its president and general manager. For about three years its affairs had been in the hands of Thomas R. Aiken, as receiver, appointed by the Madison Circuit Court. When appointed Aiken was paymaster and clerk in the office of the corporation, and after his appointment he continued to perform the same duties in addition to his official duties. McNair also became and acted as general superintendent for the receiver, and Albert Trinler continued to act as local superintendent. As its principal creditors, it owed two St. Louis, Missouri, banks $360,000. The receiver was ordered to sell all its property, real and personal, on the 14th day of June, 1899, for the payment of debts. An arrangement had been made by which the Republic Iron & Steel Company was to become the ultimate purchaser of the plant, but for some reason the purchase could not be accomplished on the day of the receiver's sale. Under an agreement between appellant Thomas Wright and the two St. Louis banks—he being a director in one of them—Wright attended and bid off the property at the receiver's sale, in his own name, and for himself, so far as was disclosed at

the time, but in fact as trustee for the two banks, as a
matter of convenience, to hold and convey for them the
title to the property to the Republic Iron & Steel Company
when the time arrived that such conveyance and transfer
could be properly made, which was believed to be within a
week or ten days. Appellant had no interest in the prop-
erty, other than as a naked trustee holding the legal title
for the banks as equitable owners. The banks furnished
the money to comply with his bid. Under the terms of
the sale the purchaser was to take the property charged
with full performance of all outstanding contracts made
by the receiver, both for the purchase of material and sup-
plies, and for the delivery of finished products of the mill.
On the 23d of June, 1899, the receiver executed a deed
of conveyance of the property to Thomas Wright, and re-
ported to the court that he had turned the property over
to him, and the sale was thereupon confirmed by the court.
This deed of conveyance was given into the possession of
James L. Blair, a resident of St. Louis, Missouri, who at-
tended the sale as the attorney for the banks, and did not
come into the possession of appellant. Neither did appel-
lant take possession of the property, but it was left in the
charge of Mr. McNair, for the banks; and appellant re-
turned at once to his home in St. Louis, Missouri. On
the next day after the confirmation of the sale, June 23,
1899, appellant executed to the banks a declaration of trust,
stating therein that he had no personal interest in the prop-
erty; that he bought the property for the banks, who were
the owners, and would convey and transfer the same when-
soever and to whomsoever they should direct in writing.
He believed the matter was to be closed up without delay,
and early in July signed and acknowledged a deed con-
veying the property to the Republic Iron & Steel Company,
and left said deed in the hands of the banks' attorney, and
went to the state of Maine for the summer, where he re-
mained until after the accident complained of happened.

The deed for some reason was not satisfactory to the Republic Iron & Steel Company, and afterwards, on July 29, 1899, upon request, he executed another deed to said company. After the execution of the first deed, appellant gave the matter no further attention until he was called upon to execute the second and final deed, and between the two dates the plaintiff's accident occurred. A few days after the sale, McNair, who had possession of the mill for the banks with the same force employed by the receiver, commenced operating the same under the name and style of Union Steel Works, Thomas Wright, Proprietor, and continued so to operate it until the mill was turned over to the Republic Iron & Steel Company under the deed of July 29, 1899. But the name was adopted and used without the knowledge or consent of appellant, and while being so operated the plaintiff was injured, to wit, on July 25, 1899. Appellant, when he bid off the plant, was a resident of St. Louis, Missouri. He did not attend court, or await the court's approval of the sale, but returned to his home immediately after the sale, and did not at any time thereafter, visit the mill. He did not leave, or at any time have, an agent or employe at the mill. He was absent from the State while the mill was operated in his name. He did not know that the mill was to be operated while the title remained in his name. He had no knowledge that the same was being operated in his name, or that it was being operated at all. He gave no one authority to use his name in operating the mill or in carrying on the business.

The foregoing facts are clearly and positively established by the evidence presented by the plaintiff in support of his complaint. The only evidence—record or parol—claimed to be in conflict with the above facts, is the statement of the plaintiff (appellee) in answer to the following question: "Who was operating the factory, if you know? A. Thomas Wright." In other answers he testifies that he was employed by one Roberts, the night superintendent;

that he did not know Thomas Wright, had never seen him, but was told by some one that Thomas Wright had bid off the mill, and was operating it. His testimony, taken as a whole, clearly shows that his answer was a mere conclusion, based upon hearsay, and does not therefore rise to the dignity of evidence. Besides the plaintiff, Jack Minor, a workman, testified that at the sale a gentleman was pointed out to him as Thomas Wright, the buyer of the mill, and he was "pretty positive" that he saw the same man passing through the puddling room of the mill with Mr. Trinler, the day superintendent, once while it was being operated in the name of Thomas Wright. Witness had not known Mr. Wright, and had seen him but twice, namely, on the occasion of the sale, and subsequently with Mr. Trinler. Neither could witness recall who it was that pointed him out; nor was it shown that witness' informant knew Mr. Wright; nor that the person pointed out was in fact Mr. Wright, and not Mr. Blair or Mr. Thompson, two other strangers from St. Louis, representing the banks, accompanying Mr. Wright. This amounts to nothing more than hearsay, and can not be regarded as antagonizing the positive statements of Mr. Wright and others that he (Wright) was not at the mill at any time while it was running in his name, nor after it was bid off by him.

We are well aware that we have no power to weigh the evidence and determine the proved facts when a substantial conflict is found to exist. But a conflict, to be recognized, must amount to more than a mere scintilla, and be composed of legal evidence. And when it is alleged to exist, and it is shown to be made up of incompetent evidence, or of testimony which is capable of being reconciled with the great bulk of the evidence, so as to give full faith and effect to all without doing violence to any, it becomes the duty of the court so to dispose of the evidence—not weigh it—and when it is thus found that there is not in the record legiti-

mate evidence sufficient, if considered alone, to establish all the material allegations of the complaint, a judgment founded upon such a complaint should be reversed. *Lake Erie, etc., R. Co.* v. *Stick,* 143 Ind. 449; *Cleveland, etc., R. Co.* v. *Miller,* 149 Ind. 490; *Habbe* v. *Viele,* 148 Ind. 116, 121.

It is averred in this complaint that the defendant Thomas Wright on the 25th day of July, 1899, and for a month prior thereto, operated the steel-mill in question, and that on the 21st day of July, 1899, the defendant employed the plaintiff to work at said mill, and that on the night of July 24, while engaged at the work assigned him, he was injured through the negligence of the defendant. These allegations were met with a general denial. It was therefore essential to the plaintiff's right of recovery that he establish them by legal evidence. It is very plain that there can be no right to judgment on the complaint without proving that Mr. Wright was the master—the operator of the mill—that Mr. Wright was the plaintiff's employer, and owed him some duty which was violated. It was not sufficient to show that the property was bid off and conveyed by the receiver to Thomas Wright, and thereafter operated in his name, when it was further shown by the same witnesses, that the bidding and conveyance were in trust for others, and that the operation of the mill in Wright's name was without his knowledge or consent. There was nothing in Wright's undertaking with the banks to subject him to a liability unusual to trustees of that class. The trust was reasonable and proper, and we know of no rule of law or principle of equity that will make him personally liable for the conduct of others acting in his name without his authority or connivance. The absence of knowledge, and of reasonable opportunity for knowledge, that the mill was being operated in his name, prevents the application of any principle of estoppel.

After a full and careful examination of the record, we find a total absence of evidence in support of the material averment of the complaint that appellant was operating the mill in question at the time of plaintiff's injury, or that he is liable for the negligent conduct of those who were operating it at that time. And it may be stated, without elaboration, that if appellant, being a resident of the state of Missouri, was not engaged or interested in the running of the mill, or in any way responsible for the manner of its operation, and had no agent or representative within the jurisdiction of the court, the service upon Aiken should have been set aside when these facts were made to appear.

As the evidence fully sustains the plea in abatement, and fails to support the judgment on the merits, the cause must be reversed. Judgment reversed, and cause remanded, with instructions to vacate the judgment and grant appellant a new trial on his plea in abatement.