SLATER ET AL. *v.* STATE OF INDIANA

[No. 28,195. Filed January 9, 1947. Rehearing Denied February 8, 1947.]

628

*Michael L. Fansler*, of Indianapolis, *Plummer & Plummer*, of Wabash, and *Herbert B. Spencer*, of Huntington, for appellants.

*James A. Emmert*, Attorney General, *Frank E. Coughlin*, First Assistant Attorney General, and *George W. Hadley*, Deputy Attorney General, for the State.

STARR, J.—The appellants, Valance U. Slater and Ross Slater, were jointly indicted in three counts; the first count charged embezzlement of three promissory notes executed by one Homer Mossburg and the property of Belle Debra; the second count charged the embezzlement of $280 collected by the defendants as agents of Belle Debra; the third count charged the defendants with obtaining the notes referred to in the first count by false pretense; on motion of the defendants this count was quashed. Each defendant pleaded not guilty to the first and second counts of the indictment. There was a trial by jury, a verdict of guilty on the first count, not guilty on the second count, and judgment was rendered on the verdict from which this appeal is taken.

The appellants have assigned as error the overruling of their separate motions for a new trial. The only ground in each of said motions which is not waived is that the verdict of the jury is contrary to law. Upon this ground the appellants have each questioned the sufficiency of the evidence to sustain the conviction.

The evidence in this case which tends to support the conclusion of the jury is substantially as follows: For

several years prior to his death in 1937, one Ross Smethurst had operated a retail hardware store at Warren, Indiana, under the firm name of The Smethurst Hardware Company; that the appellants are brothers and are nephews of the said Ross Smethurst; that each of said appellants had at times beeen employed in the store while the same was being operated by Smethurst; after the death of Ross Smethurst they formed a partnership with his widow, which partnership took over the ownership and operation of the store under its old name. Mrs. Smethurst was not active in the management of the partnership. During the year 1940 the volume of business of the firm had rapidly decreased and it was discovered that the business was in bad financial condition. In the spring of 1942 the store was closed and turned over to the said Belle Debra who was a creditor of the firm. Belle Debra was the widow of Frank Debra who died in 1937. For many years the Debras had done business with the hardware company. Frank Debra, during his lifetime, and while Ross Smethurst conducted the business, over a period of many years, had purchased from the company a great many notes taken from its customers in payment for merchandise. When these notes were purchased Frank Debra would take possession of them but the makers were never notified of the transfer of ownership. The store would continue to make collections on these notes so purchased and kept a ledger account which showed the notes owned by Mr. Debra with receipt of the hardware company of payments on them and the indebtedness of Mr. Debra to the company for merchandise which he from time to time purchased from the store. During Mr. Debra's lifetime there were periodical settlements and a balance arrived at between

him and the company; when such balance was determined, if in his favor, it was paid either in cash or merchandise or by the taking over of other notes held and owned by the hardware company. The appellants produced evidence that Mr. Debra had occasionally told Mr. Smethurst to keep the money collected on the notes and use the same in the business and he would take merchandise or notes in return, and that Mrs. Debra was present when many of these conversations took place. Mrs. Debra denied this and stated she was unaware of any such arrangement. After the death of her husband Mrs. Debra purchased various notes from the partnership which had been made and delivered to the company; that no notice was given to the makers of these notes of the transfer to her; that the company, with the consent of Mrs. Debra, did continue the collection of said notes after they had been so purchased by her; that on several occasions when different makers of notes, which were held by Mrs. Debra, made payments on the same to the hardware company the appellants would inform the makers that these notes were lost. The state offered evidence without objection which disclosed that at other times when such notes so held by Mrs. Debra became due, these defendants would, on their own motion, take renewal notes from the makers and would inform them that the original notes were mislaid; and did on various occasions after securing such renewal notes negotiate and sell the same and deposit the proceeds to the credit of the partnership while Mrs. Debra held the original notes.

On February 2, 1940, one Homer Mossburg bought a tractor from the company through appellant, Valance U. Slater, and in part payment for the same made and executed to the company four certain promissory notes

which were turned over by him to Valance; one of the notes was in the principal sum of $95.00 which he paid in July, 1940, to the company. The three remaining notes, as set out in count one of the indictment, were in the principal sum of $100, $105 and $105 respectively, and were due on or before December 1, 1940, July 1, 1941, and December 1, 1941, respectively. Prior to the payment of said note which was in the principal sum of $95.00 all of said notes were sold by the company to Mrs. Debra; that the note which was due on July 1, 1941, and the one which was due on December 1, 1941, each bore the endorsement "Smethurst Hdw. Co., Ross Slater." On August 24, 1940, appellant, Valance U. Slater, told Mrs. Debra that Mr. Mossburg had been in and said he would soon be ready to settle for his three notes then so owned by Mrs. Debra. Valance U. Slater requested that she bring the notes to him so he could return them to Mr. Mossburg when he settled. Valance U. Slater denied having had this conversation, or that he had seen these notes, or that they were originally delivered to him by Mossburg, or that he knew these notes were being executed; that on August 25, 1940, pursuant to the request of appellant, Valance U. Slater, Mrs. Debra did take said notes to the store and left them; that the appellant, Ross Slater, was present when she so delivered the notes, and by his instruction she was given a certain receipt which was made out by the company's secretary, Charlene Hardman, who was also present when Mrs. Debra delivered the notes. Appellant, Valance U. Slater, had told Mrs. Debra that appellant, Ross Slater, was the one that did the collecting in business matters. About seven days after appellant, Valance U. Slater, had talked to her she went to the company's store and there inquired of

him if Mossburg had paid off the notes to which he answered that "It hasn't been fixed up yet." About seven days after this conversation she again went to the company store where she met appellant, Ross Slater, and asked him if the Mossburg notes had been paid, to which he answered that Mossburg had not been in. For two months and over after Mrs. Debra had left the notes with the company, as above indicated, she had many times, when she could find either of the Slater boys, asked them about the same; that she has never collected anything on these notes since she so delivered them to the company; that on September 25, 1940, the appellant, Ross Slater, took said notes to the bank located in Van Buren, Indiana, and without the knowledge or consent of Belle Debra discounted them, along with another note, and received therefor from. said bank for all of said notes the sum of $379 which sum was on the same day deposited to the credit of the company in a bank at Warren, Indiana; that at the close of banking hours and after said deposit was made in the Warren Bank, the balance of the firm's account was $13.71; that Belle Debra had never authorized the company to use, in the business of said company, any moneys collected for her on any of the notes purchased by her, nor had she ever authorized appellant, Ross Slater, to negotiate or discount the involved notes; that there is no evidence that said company or any of its partners or authorized agents had ever, in the course of doing business with Belle Debra, discounted any of the notes so sold by said company to her, save and except the Mossburg notes; that Homer Mossburg testified that he executed the notes to the company and delivered them to Valance U. Slater; that he had never seen appellant, Valance U. Slater, after he executed the notes on Feb-

ruary 2, 1940, and that he did not know Ross Slater; that after said date he had made two or three trips to the company store to try and get this note which he had paid but it never could be found; that while he was there he talked to the office girl and appellants' father in regard to said note; that he could never find either of the appellants.

The appellant, Ross Slater, admitted that he discounted at the Van Buren Bank the three notes set out in count one of the indictment, but testified that he did so by virtue of an understanding with Belle Debra and an authorization so to do from her. It is contended that her testimony cannot fairly or reasonably be construed as a denial of Ross Slater's testimony. Her testimony on this particular point is contained in that part of her cross examination by appellants which consists of the following questions and answers:

"Q. In fact you had that conversation before July 25? You told him along in June?

"A. Well, I told him (Ross Slater) I would have to have some money to pay on my house.

"Q. At the same time he told you he would like to have some money from you too, that they were pretty hard pressed, which you knew?

"A. I don't remember that.

"Q. Then he told you he would get you what money he could and told you there might be some notes he could negotiate for you? He told you that too?

"A. Yes, he said he thought there might be some that might be paid in.

"Q. And at that time he told you he thought he could get the Mossburg notes, didn't he?

"A. I don't think he did.

"Q. Was there any talk about the Mossburg notes?

"A. Not at that time.

"Q. Well, there was a little later?

"A. Well, Valance told me he would have to have the notes because Mr. Mossburg was coming in to pay them off.

"Q. Well, there was a conversation wherein you told Ross Slater that you had to have money or needed money to apply on your house and there was some discussion at that time about negotiating certain notes. Now that is true, isn't it?

"A. I don't know whether that is true or not, Mr. Spencer.

"Q. Well you just said so. I was trying to repeat so there could be no misunderstanding about it. You stated in answer to a previous question, Mrs. Debra, that you told Ross you needed money to apply on your house?

"A. Yes.

"Q. And you stated there was some discussion about negotiating some notes or raising some money on some notes?

"A. He said that there might be somebody paying in their notes.

"Q. And something was said about negotiating some notes, did he not? Didn't he ask you whether you had some notes you might raise some money on?

"A. No.

"Q. Didn't say a word of that kind?

"A. I don't think he did."

The foregoing questions and answers are such that from them the jury had a right to infer that Mrs. Debra did not authorize the negotiating of said notes.

In our opinion the evidence is sufficient to support the conviction of Ross Slater. As to appellant, Valance U. Slater, his act in telling Mrs. Debra to produce the notes, if we believe the State's evidence, caused her to deliver the notes as herein set out. This delivery was as material to the consummation of the crime as any other step taken by the appellants since it was this act which

put the appellant, Ross Slater, in possession of the notes, which possession was necessary, in order that they might be embezzled by being discounted at the Van Buren Bank. Valance U. Slater's actions certainly aided Ross Slater, his partner, in carrying out the embezzlement.

We are aware that there must be evidence to support each material fact essential to authorize a finding of guilty, and that this evidence must be substantial, and by substantial we mean more than "seeming" or "imaginary."

We also have in mind that it is not enough to sustain a conviction that the evidence, when given full faith and credit, may warrant a suspicion and amount to a scintilla. *Sylvester* v. *State* (1933), 205 Ind. 628, 187 N. E. 669. It is also the law that where circumstantial evidence is relied upon for conviction it must be such as to exclude every other reasonable hypothesis except that of guilt. *Osbon* v. *State* (1937), 213 Ind. 413, 13 N. E. (2d) 223. In the light of these rules of law we will now consider the case of Valance U. Slater.

The offense charged herein involves the element of guilty knowledge and intent; in other words, unless there was evidence from which the jury could infer that Valance U. Slater knowingly aided in the commission of the crime then his conviction cannot stand. *Lawver* v. *State* (1943), 221 Ind. 101, 46 N. E. (2d) 592. We are of the opinion, however, that there was evidence from which the jury could so infer.

As we view this case what was done here was a "collocation of independent but cooperative acts" done by the appellants who were closely associated with each other. Although evidence of mere association or relation between the parties is not

sufficient to establish a conspiracy; *Johnson* v. *State* (1935), 208 Ind. 89, 194 N. E. 619; this fact must be considered.

In the case of *Archer* v. *The State* (1886), 106 Ind. 426, 7 N. E. 225 on page 432, this Court quotes with approval the following from Dr. Wharton:

> "The actual fact of conspiring may be inferred, as has been said, from circumstances, and the concurring conduct of the defendants need not be directly proved. Any joint action on a material point, or a collocation of independent but cooperative acts, by persons closely associated with each other, is held to be sufficient to enable the jury to infer concurrence of sentiment." 2 ·Whart. Crim. Law (9th ed.) § 1398.

There was evidence from which the jury could infer that Valance U. Slater was stating an untruth and was not in good faith when he told Belle Debra to bring in the Mossburg notes as he had been in and wanted to pay the same. The evidence also discloses that within a few days after Belle Debra left the notes with the company, upon inquiry, Valance U. Slater notified her that Mossburg had not been in. Also, the appellants' counsel in the oral argument of this case conceded that the renewal of other notes, and the discounting of the same, and the keeping of the proceeds thereof in the company's treasury as detailed herein, was competent evidence to prove intent on the part of the appellants.

Where reliance is placed entirely upon circumstantial evidence to establish a crime and it establishes a strong lack of motive, its absence is a powerful circumstance tending to clear the accused from blame. *Osbon* v. *State, supra.* In the case at bar, however, there is evidence that the proceeds of the embezzled notes went to the partnership of which Valance

U. Slater was a member and which was in straitened circumstances. This is an item which could properly be considered by the jury and from which they could infer that Valance U. Slater was to profit by the entire transaction. Such an inference might properly suggest a motive which is "usually quite influential in fixing criminal responsibility." *Guetling* v. *State* (1926), 198 Ind. 718, 153 N. E. 765.

Counsel for the appellants argue that the case of *Martin* v. *The State* (1897), 148 Ind. 519, 47 N. E. 930, is squarely in point upon the question of the sufficiency of the evidence to obtain the conviction of Valance U. Slater. This case is clearly distinguishable from the one at bar; there the defendants Martin and Thayer, while tramping through the country, entered a clothing store where Martin went with the clerk to the rear of the store for the ostensible purpose of purchasing a pair of trousers and while he was so attracting the attention of the clerk, Thayer, who was in the front of the store, stole certain clothing; they then left the store together and were still in each other's company when arrested and the defendant, Thayer, at the time of the arrest, still had possession of the stolen property. This Court in reversing the case as to Martin, among other things said:

> "There was no evidence of a previous understanding that Martin would occupy the attention of the clerk of the store while Thayer would steal the clothes, nor that Martin knew Thayer intended to steal or had stolen the clothes, nor was there evidence tending to show that Martin did not, in good faith, desire to purchase trousers."

In the case at bar we think there was evidence from which the jury had a right to infer that Valance U. Slater was not in good faith when he persuaded Belle

Debra to turn the note over to the partnership and when he informed her that Mossburg had not been in as detailed herein; nor was there any evidence in the Martin case that Martin would profit in any way from the stealing of the goods.

Appellants' counsel would have us adopt the notion that each act of each appellant in this transaction is separate and distinct and stands alone and that there is no evidence connecting the various transactions here involved. As we view this matter there was sufficient evidence from which the jury could reasonably infer that the appellants were co-conspirators in the commission of this crime. An active conspirator in the commission of a felony is an accomplice. *Dunlap* v. *State* (1933), 205 Ind. 384, 180 N. E. 475, 180 N. E. 764; *Peats* v. *State* (1938), 213 Ind. 560, 12 N. E. (2d) 270. The term "accomplice" includes an accessory. The proof of such conspiracy more often rests upon circumstantial than direct evidence.

The judgment of conviction against each defendant is affirmed.

Young, J. dissenting with opinion.

O'Malley and Emmert, J. J. not participating.

NOTE.—Reported in 70 N. E. (2d) 425.

## DISSENTING OPINION

YOUNG, J.—The prevailing opinion in this case was submitted to the court before Judge Richman had been replaced by Judge Emmert. At that time Judge Richman and I dissented and Judge Richman wrote a dissenting opinion, in which I concurred. It was then thought, Judge O'Malley having declined to participate and the remaining members of the court being evenly

divided, that the case should be continued until the next term of court. Section 2-3232, Burns' 1946 Replacement and § 9-2407, Burns' 1942 Replacement. With the change in the personnel of the court the reason for continuance no longer exists. I adhere to my dissent and adopt Judge Richman's earlier dissenting opinion, as follows:

"I concur in the conclusion of Judge Starr that there is sufficient evidence to sustain the conviction of Ross Slater. I dissent as to the conviction of Valance Slater. I am not able to find any evidence of a criminal intent on his part. It is true that the evidence though conflicting warrants an inference that through his false statement Mrs. Debra was induced to deliver the notes to the store from which they were taken by Ross Slater and discounted. In my opinion there is no substantial evidence to connect Valance with the discounting. That he benefited is not enough nor that he was the brother of Ross and associated with him in the business. For aught that appears in the evidence the criminal intent of Ross was conceived on the day he discounted the notes, a month after they came into his possession. I find nothing in the record connecting Valance with any renewal or discounting of renewal notes prior to the date of the offense with which he was charged. Only by piling inference on inference may Valance possibly be connected with the crime. I understand, of course, that this court has held that from one inferred fact another fact may be inferred, and so on, but I am not willing by such a process of reasoning to affirm a conviction which sends a man to the State Prison."

NOTE.—Reported in 70 N. E. (2d) 425.