MANLOVE *v*. STATE OF INDIANA.

[No. 30,846. Filed January 16, 1968. Rehearing denied March 25, 1968.]

72

*Hall Cochrane,* of Indianapolis, for appellant.

*John J. Dillon,* Attorney General, and *R. Robert Yeager,* Deputy Attorney General, for appellee.

HUNTER, J.—Appellant, Edward Manlove, by court appointed counsel, appeals from a conviction of murder in the second degree. Pursuant to such conviction he was sentenced to life imprisonment. Appellant's first allegation of error in his motion for new trial is to the effect that the verdict of the jury is not sustained by sufficient evidence.

The resolution and disposition of this appeal will be organized in three (3) parts as follows:

(1) a summary of the evidence most favorable to the appellee State.

(2) an enumeration and citation of the rules of law applicable to juries and trial courts in cases such as the case at bar where all the evidence pertaining to the essential elements of the crime is wholly circumstantial' and where the sufficiency thereof is challenged on appeal.

(3) application of said rules and principles to a resumé and analysis of the circumstantial evidence.

## (1)

When one who has been convicted of a criminal offense prosecutes an appeal, this Court will only consider the evidence most favorable to the State, and all reasonable and logical inferences to be drawn therefrom. *Capps* v. *State* (1967), 248 Ind. 472, 229 N. E. 2d 794. In this case, the evidence most favorable to the State may be summarized as follows:

Decedent Lee Roy Reed left his Indianapolis home at about 7:00 P.M. on April 30, 1963, and never returned. His body was found the next morning floating in the Water Company canal. He had been shot five times in the head and neck.

An employee of the Cottage House tavern testified that decedent Reed entered the Cottage House about 7:00 P.M. on April 30, 1963, with one Henderson X. Carruthers but that Henderson left soon thereafter. Defendant arrived about 9:30 or 10:00 o'clock and was accompanied by a tall, slender Negro with a goatee named Taylor. The employee said Reed was still present when defendant arrived.

Defendant Manlove ordered a hamburger to take out. The waitress testified that while defendant was waiting, Taylor told defendant that Reed had called defendant a name. During this time the waitress noticed that defendant had a gun; and, as defendant began to leave, she heard defendant say to

Reed, "Come on, let's go." The waitress saw defendant and Reed leave together at about 11 o'clock.

The bartender at the same tavern saw and heard defendant talking to Reed at the Cottage House, but could not understand what they were saying. He said defendant and Reed left "about the same time" but he did not see them leave.

Witness O'Bannon, a post office employee, testified that at about 11:15 on April 30, 1963, while walking home, he noticed a car in the alley behind 2225 Northwestern Avenue, which is a few blocks from the Cottage House Tavern. He said there was a light on inside the auto, but that he heard nothing.

Witness Clyde Richardson lived at 2225 Northwestern Avenue on April 30, 1963, and testified that on the morning of May 1, 1963, he noticed that the fence post at the end of his yard, adjacent to a bend in alley, had been jarred so that it sat at an angle, that the post showed the imprint of the vehicle that struck it, that there were tire tracks leading to the post, and that there was some blood within 6 or 7 feet of the post. He remembered hearing "a little bump or crash or something like that" around the time of a program change at 10:30 or 11 o'clock, but on cross-examination he testified he saw nothing in the rear of his house that night.

Guy Gilbert testified he lived 2 houses north of Richardson at 2233 Northwestern Avenue and that at about 10:30 or 11 o'clock on the evening of April 30, 1963, he saw a light colored car parked out in the alley which seemed to be up against the post. He could not identify the make or model of the car, nor could he say for sure how many people were in the car although he thought there were two. He could not tell whether they were white or Negro, male or female, but one of them got out of the car and examined the headlights, and seemed to be a male.

Mayme Gilbert, wife of Guy Gilbert, testified she saw the auto up against the post and saw a dark looking man outside of it. She said she thought she saw the man get back in the

car and that there appeared to be another person in the car—a woman wearing a red hat. She said auto's headlights were on during this time. She also said that cars often use the alley at night. The alley dead ends at the Richardson property.

The next morning Reed's body was discovered about 5 blocks away from the 2200 block of Northwestern, floating in the canal. On the same day, the Indianapolis Police were notified that Chicago Police had found a 1962 Ford, light blue with white top, registered in the name of Lee Roy Reed. There was blood in the car, two spent bullet slugs and some debris.

Photos of such car were introduced showing a caved-in front bumper, and the blood spots. The blood was analyzed as group A blood. The slugs were .38 caliber.

Some time during June, defendant was arrested in Chicago and on September 11, 1963, he was returned to Indianapolis by Indianapolis Police. Police Officer Gates testified that on the trip back to Indianapolis from Chicago, and later, in December, 1963, at Police Headquarters, defendant told him and Officer Michealis that he, defendant, had been with Reed and two other men on the afternoon of April 30, 1963, first at the 40th Street Tavern, and then at the Cottage House. Defendant also told them that at between 4 and 6 P.M. the four of them drove to his mother's residence in the 2200 block of Northwestern to get some more money. Defendant said he told his companions to drive around back into the alley since there was no parking on Northwestern from 4 to 6 P.M. Defendant said he then went into the house, changed clothes and returned to the street, where his companions were supposed to pick him up, but they did not show, and while he was waiting he decided to go to Chicago. So he took a city bus to the bus station and caught the eight o'clock bus to Chicago.

Finally, he told them someone had stolen his gun.

Officers assigned to the case received pictures of Reed's damaged car from Chicago Police and began searching for a location where the damage to the car could have taken place.

On May 10, they found the creosote-soaked post behind the Richardson residence, sliding tire tracks leading to the post, and a few feet away, a dark spot which appeared to be blood near the post.

F. B. I. agents had arrested Manlove in Chicago for auto theft and on June 27 he told them during interrogation he could not remember the date he came to Chicago, that he never owned a .38 revolver, but he had owned a .32 caliber gun which he had sold a couple weeks before coming to Chicago in an unknown bar to an unknown person. He told them he left Indianapolis when he heard that the Indianapolis Police were making inquiries about him relative to the slaying of Lee Roy Reed. He told them that he had assumed an alias in Chicago to avoid the F. B. I. On cross examination of the Chicago F. B. I. agent, it came out that defendant maintained a residence in Chicago, and had lived in that city early in 1963.

Testimony by Martin Elmore, crime laboratory technician from the Indianapolis Police Department, indicated that the bullet slugs found in Reed's car in Chicago, the one slug found in Reed's body, and the one slug found in the alley in the 2200 block of Northwestern were all propelled through the same firearm.

Police Lab technician David Kerkhoff testified that the blood from the blood spot found in the alley in the 2200 block of Northwestern was type A, the same as Reed's, and that the creosote in the large post behind the property on Northwestern was the same compound as was found on the damaged portion of the bumper of Reed's auto. He also testified that two plaster casts made from the tires of Reed's auto were very similar to casts made of tire tracks in the alley at the 2200 block of Northwestern on May 10, 1963.

(2)

In our consideration of the appellant's contention of error due to the insufficiency of the evidence to sustain the verdict

of the jury finding him guilty of murder in the second degree, it should be noted that all of the evidence pertaining to the essential elements of the crime charged is entirely circumstantial. Indeed, in the case at bar, most of the evidence pertaining even to subsidiary facts is circumstantial. There is no direct evidence on any issuable fact.

The rule governing juries and trial courts in the trial of criminal cases is that where the evidence necesary for a conviction is wholly circumstantial in character it must be of such conclusive and persuasive force that it tends to point surely and unerringly to the guilt of the accused to an extent that it excludes every reasonable hypothesis of innocence. *Christen* v. *State* (1950), 228 Ind. 30, 89 N. E. 2d 445; *White* v. *State* (1948), 226 Ind. 309, 79 N. E. 2d 771; *Henry* v. *State* (1925), 196 Ind. 14, 146 N. E. 822; *Osbon* v. *State* (1938), 213 Ind. 413, 13 N. E. 2d 223.

However, it should also be stated that where there are two *reasonable inferences* arising from the circumstantial evidence in a case, one of *guilt* and *another of innocence*, it is not the duty or right of this Court to reverse simply because *we* might believe the circumstances do not exclude every reasonable hypothesis of innocence. It is the jury's function, not ours, to *weigh, conflicting evidence* or uncontradicted evidence from which *conflicting, yet reasonable,* inferences may be drawn and then determine whether such evidence excludes every reasonable hypothesis of innocence. *Christen* v. *State, supra; White* v. *State, supra; Henry* v. *State, supra; Osborn* v. *State, supra.*

Therefore on the matter of sufficiency of the evidence in the case before this Court we must determine whether there was adequate and substantial circumstantial evidence from which the jury could have drawn a reasonable inference of the appellant's guilt. In so doing we are only exercising the duty and responsibility of a court of review, and while we may not weigh the evidence we must pass

upon its sufficiency as a matter of law. *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641; *Christen* v. *State, supra; Howard* v. *State* (1921), 191 Ind. 232, 131 N. E. 403 and other cases too numerous to cite. There must be substantial evidence to support the verdict on each essential element of the crime charged. If there is not such evidence in support of the verdict, then it becomes an error at law which may be reviewed and corrected on appeal. *Howard* v. *State, supra; Baker* v. *State, supra.* Likewise, in passing upon the sufficiency of the evidence where it is wholly circumstantial in character, this Court will, in the event an essential element is lacking, hold the evidence to be insufficient and the verdict contrary to law.

We therefore consider and pass upon the evidence for the purpose of determining whether there is substantial evidence of probative value from which a jury could reasonably find or infer the existence of each material element of crime beyond a reasonable doubt. *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6; *Baker* v. *State, supra.* If upon consideration of the wholly circumstantial evidence most favorable to the State, reasonable men might differ as to whether or not the body of such evidence is sufficient upon which to base a conviction of an accused, the verdict of guilty will not be set aside. If, however, *no reasonable man* could be convinced from such body of circumstantial evidence of the guilt of an accused beyond a reasonable doubt, the *verdict and judgment must be reversed as not being sustained* by sufficient evidence. *Baker* v. *State, supra; Easton* v. *State, supra,* and cases there cited.

It is therefore the duty of this Court in this appeal to consider and apply the above mentioned combination of rules to the record of evidence before us. In so doing this Court must determine whether the evidence, wholly circumstantial in character, is sufficient to exclude every reasonable hypothesis of innocence of the accused, Manlove. It is imperative

that we do so, in order to determine whether the jury followed the proper guidelines in weighing and considering the whole body of the circumstantial evidence and whether it was warranted in finding justifiable and reasonable inferences therefrom of all of the essential elements *beyond a reasonable doubt*. If this Court concludes that the circumstances established by the evidence do not exclude every reasonable hypothesis of the innocence of the defendant, then *no reasonable man* could find the guilt of the defendant beyond a reasonable doubt, and the verdict should not stand.

It is interesting to note that in *Christen* v. *State, supra,* this Court first stated that it could not review the question of whether the wholly circumstantial evidence in that case excluded every reasonable hypothesis of the defendant's innocence, that being the function of the jury. However, it becomes readily apparent after a careful review of the case that this Court proceeded to do precisely what it stated it had no power to do in reversing the appellant's conviction. At one point, the Court in *Christen* stated:

"In the case before us there was a lapse of four hours between the time the appellant was last seen with deceased and the time the deceased was found nude and badly injured in a dark alley with her clothing scattered about. It was during these four hours that the offense charged was committed. It was uncontradicted that the locality in which she was found was in a lawless and morally low section of Ft. Wayne. With four hours unaccounted for, and a woman in a helplessly intoxicated condition in a dark alley, in a neighborhood of low type taverns and houses of ill fame almost anything could have happened." 228 Ind at 40.

Thus it is clear that where evidence is wholly circumstantial and fails to exclude every reasonable hypothesis of innocence such evidence is not sufficiently persuasive to allow *a reasonable man* to find the accused guilty beyond a reasonable doubt and such a finding and judgment of guilty cannot stand. *Osbon* v. *State* (1938), 213 Ind. 413, 13

N. E. 2d 223; *McAdams* v. *State* (1948), 226 Ind. 403, 81 N. E. 2d 671 and cases cited therein. To the extent the language in *Christen* v. *State, supra,* indicates this Court cannot pass upon the question of whether wholly circumstantial evidence excludes every reasonable hypothesis of innocence, such language is disapproved. For if the jury is bound to follow such a guideline in reaching its verdict, (and this Court has so stated the rule time and again, and trial courts have so instructed juries in Indiana for more than a century) then this Court must have the authority and duty on review to determine whether that guideline has been adhered to. If such is not the province and duty of this Court on appeal, then the jury's conduct in that respect would be immune to any judicial review and the right of appeal on the question of the sufficiency of circumstantial evidence would be an impotent and useless procedural rule. In support of and relevant to such declaration of appellate review in a criminal case we cite the case of *State* v. *Gregory* (1936), 339 Mo. 133, 143, 96 S. W. 2d 47, quoted with approval in *Baker* v. *State, supra,* as follows:

" 'Now since the test of substantial evidence is whether a jury reasonably could find the issue thereon, the result must depend in some measure upon the degree of persuasion required. In a criminal case liberty and sometimes life are involved, and there cannot be a conviction except upon a finding of guilt beyond a reasonable doubt. Necessarily, therefore, it becomes the duty of an appellate court as a matter of law to decide whether the evidence was sufficient to induce a belief of the defendant's guilt beyond a reasonable doubt in the minds of jurors of average reason and intelligence. And in resolving that question the court undoubtedly can pass on the credibility of the testimony to the extent of determining whether it was substantial in the sense above explained. In no other way can the rights of the defendant be protected. It would be an incongruous situation if the court were compelled to let a conviction stand as being supported by evidence warranting a verdict of guilt beyond a reasonable doubt, when for any reason made manifest on the record the court is convinced the evidence reasonably could not support a conviction.' This standard is supported in many jurisdictions."

As stated hereinbefore, each of the essential elements of murder in the second degree must be established by the evidence beyond a reasonable doubt and under the rules and guidelines as hereinbefore stated. The essential elements are:

(1) that the defendant killed the deceased;
(2) that he did so purposely and maliciously.

And unless each element is established beyond a reasonable doubt the accused must be found not guilty by the jury. This rule is so fundamental it requires no citation of authority.

### (3)

The above rules and guidelines are declaratory of duties of juries and trial courts and this Court's right and responsibility as a court of review on appeal where the alleged proof of guilt is wholly circumstantial in character. We therefore will pass upon the sufficiency of the evidence in the case at bar.

A resumé of the evidence in the case at bar reveals clearly that *there was approximately an 8 to 12 hour interval between the time the defendant and the deceased were last seen together* leaving the Cottage House Tavern, *and the time when the deceased's body was found* in the canal. *Nowhere in the evidence has the State shown or even attempted to establish the approximate time of death within reasonable time limits, although an autopsy was performed and expert medical testimony on other matters was presented at the trial.* There is no evidence that the defendant ever owned or possessed a .38 caliber pistol nor was the murder weapon ever produced.

There is no evidence to indicate more than the fact that defendant and deceased were only slightly acquainted. The only evidence of possible animosity between them is found in the *double hearsay* testimony of a Cottage House Tavern waitress that one, Taylor, told defendant, Manlove, that the deceased had called him a "name". What the "name" might

have been is not in the record, and even if it were, it could hardly be deemed sufficient, without *proof of more,* to establish a motive, and thus intent, for a purposeful and malicious homicide.

This Court recognizes the *general rule* that it is not absolutely necessary for motive to be established. Where the evidence as a whole establishes a strong lack of motive, however,

".  .  . its absence is a powerful circumstance in excupation (sic) of defendant where reliance is placed entirely upon circumstantial evidence to establish the crime." *Osbon* v. *State, supra,* quoting from the case of *People* v. *Lewis* (1937), 275 N. Y. 42, 9 N. E. 2d 765. See also *Slater* v. *State* (1947), 224 Ind. 627, 70 N. E. 2d 425.

The State apparently attempted to establish that defendant killed decedent Reed and then drove Reed's car to Chicago and abandoned it within five or six blocks of the home of one of the defendant's relatives. The defendant's fingerprints were not found on or in the deceased's auto. *Neither was the date of defendant's arrival* in Chicago ever established. Furthermore, no witnesses were produced who could identify the defendant as having been in deceased's auto at or near the time of the crime, or at anytime thereafter. Further, there was uncontradicted evidence that defendant maintained a residence in Chicago.

The State's evidence only establishes that the defendant and the deceased were seen together in a tavern approximately 12 hours before the body of the deceased was discovered; that a crime was committed which resulted in Reed's death; that Reed's car was near the home of defendant's mother at sometime approximately 8 hours before the discovery of the deceased's body; that both the defendant and the deceased's auto were subsequently located in Chicago; that defendant was using an alias because he was aware that he was being sought in connection with Reed's death; and that the defendant's stories to the police and the Chicago F. B. I. were not entirely consistent.

In the final analysis, the State's evidence has succeeded *only* in proving that the circumstances as a whole throw a degree of suspicion upon the appellant, and demonstrates only that he clearly had an opportunity to take the life of Lee Roy Reed. If the evidence merely tends to establish a suspicion of guilt, or the mere opportunity to do so it is clearly insufficient to sustain the conviction. *Easton* v. *State, supra* and *Baker* v. *State, supra,* and cases cited therein. If mere opportunity or suspicion are sufficient to convict an accused of a felonious homicide or murder in the second degree then the life and liberty of many innocent people may be summarily sacrificed. The law requires substantial evidence to prove guilt beyond a reasonable doubt. We cannot predicate an affirmance of guilt upon mere possibility because of opportunity or suspicion. *Osbon* v. *State, supra.*

It is not enough that the evidence merely tends to support a conclusion of guilt; it must support such conclusion beyond a reasonable doubt. Thus, in the case at bar, while the body of the evidence perhaps raises the probability of appellant's guilt, it clearly does not exclude every reasonable possibility of innocence. From the evidence there is no clear way in which the jury could have determined that the appellant remained with the deceased after leaving the Cottage House Tavern, nor can it be said that appellant's later presence in Chicago excludes every reasonable hypothesis of his innocence.

In summation, it may be said that while the prosecution has presented circumstance upon circumstance pointing in varying degrees to the probability of the appellant's guilt, still there are many notable voids in its case—too many to be ignored. The reasonable hypotheses of the appellant's innocence remain infinite in number on the basis of the record before us. Therefore, we hold the question of the insufficiency of the evidence here presented ceases to be one of fact and credibility and on review becomes a question of law under

the doctrine of the "reasonable man rule." And ". . . it becomes the duty of the court so to dispose of the evidence—not weigh it." *Wright* v. *Bertiaux* (1903), 161 Ind. 124, 129, 66 N. E. 900.

A verdict based merely upon suspicion, opportunity, probability, conjecture, speculation, and unreasonable inferences of guilt gleaned from the vague circumstances in the record of the evidence before us cannot be upheld and must be reversed. This court in the case of *Schusler* v. *State* (1868), 29 Ind. 394 in determining the evidence did not sustain a verdict of guilty stated:

> "To sustain such a conviction the facts proved must be susceptible of explanation upon no reasonable hypothesis consistent with the innocence of the person charged. Although the mysterious crime cannot be solved from the evidence except upon the supposition of the defendant's guilt, still a conviction cannot follow. The life or liberty of a person cannot be legally sacrificed on the ground that only by regarding him as guilty an explanation is afforded of the perpetration of a proved offense . . ." (p. 395).

Only by presuming defendant Manlove guilty until proved innocent could we find the evidence hereinbefore recited sufficient to sustain the conviction. We cannot indulge in such a supposition.

There are many other errors asserted but in view of our holding we do not deem it necessary to dispose of them. It appears from the record that the defendant filed a motion for a directed verdict at the close of the State's case. We hold that the trial court committed error in overruling the motion and refusing to direct the jury to return a verdict of not guilty.

Therefore this cause is reversed and remanded to the trial court with instructions to vacate and set aside the verdict and judgment, sustain the defendant's motion for a directed verdict and enter an appropriate finding of not guilty.

Judgment reversed.

Lewis, C. J., Arterburn, Jackson and Mote JJ. concur.

## ON PETITION FOR REHEARING

HUNTER, J.—The Attorney General, in his petition for rehearing, complains that this Court has altered its standard for reviewing the sufficiency of the evidence by the opinion heretofore filed.

The question with which this Court concerned itself was whether *any* reasonable man could have concluded from the evidence that there was sufficient substantial evidence of probative value to support a finding of guilty beyond a reasonable doubt. In order to answer that question in a case where all the evidence is circumstantial, we were required to ask ourselves whether *any* reasonable man could have concluded from the evidence that every reasonable hypothesis of innocence was excluded.

Each paragraph of the Court's opinion must be read in context with every other paragraph. When that is done, it will be seen that the standard of this Court in reviewing the sufficiency of the evidence to support a criminal conviction has not changed. On appeal, in order to affirm such a conviction as based upon sufficient evidence, this Court must find that there is substantial evidence of probative value from which a jury could reasonably find or infer the existence of each material element beyond a reasonable doubt. If reasonable men might differ as to whether the evidence most favorable to the State is sufficient, the verdict of the jury will stand. Only where no reasonable man could be convinced of defendant's guilt beyond a reasonable doubt will the verdict and judgment be reversed for insufficient evidence. *Baker* v. *State* (1956), 236 Ind. 55, 138 N. E. 2d 641; *Easton* v. *State* (1967), 248 Ind. 338, 228 N. E. 2d 6.

The standard set forth in the above paragraph also appears in the original opinion in this case. Therefore, it is clear that

the original opinion made no change in the law of Indiana relative to appellate review of the sufficiency of the evidence. The voids in the evidence in this case compelled the result which we reached.

Rehearing denied.

Lewis, C. J., Arterburn, Jackson and Mote, JJ. concur.

NOTE.—Reported in 232 N. E. 2d 874. Rehearing Opinion Reported in 235 N. E. 2d 62.