
FILED

Apr 13 2017, 7:53 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Hilary Bowe Ricks
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| S.M., *Appellant-Respondent,* <br><br> v. <br><br> State of Indiana, *Appellee-Petitioner* | April 13, 2017 <br><br> Court of Appeals Case No. 49A04-1609-JV-2035 <br><br> Appeal from the Marion Superior Court <br><br> The Honorable Marilyn A. Moores, Judge <br><br> The Honorable Geoffrey A. Gaither, Magistrate <br><br> Trial Court Cause No. 49D09-1602-JD-181 |

**Mathias, Judge.**

[1] S.M., a teenaged girl, was adjudicated a delinquent child for helping H.J., a teenaged boy, steal Lashawn Rogers's ("Rogers") car. She appeals from the true finding in Marion Superior Court that she committed what would be Level 6

felony theft and Class A misdemeanor criminal trespass if done by an adult. Because the true finding was supported by sufficient evidence, we affirm.

## Facts and Procedural Posture

[2] Shortly before 5:00 p.m. on December 6, 2015, Rogers pulled her car into a gas station near the intersection of 38th Street and Oxford Street in Indianapolis to buy some cookies for her granddaughter. As she pulled up to the gas station, she saw two teenagers, a boy and a girl, standing near her parking space. Rogers eyed the pair warily, expecting they intended to ask her for money. Leaving the car running and taking only her electronic key fob with her, Rogers got out of the car and told the pair she did not have any money to give them. Rogers left her personal cell phone, her laptop computer, her purse, and other items in the running car, and locked it with the key fob.

[3] As she made her way past the pair, Rogers tripped over the concrete parking curb at the head of the parking space and dropped what she had in her hands, including the key fob. The boy offered his assistance. Embarrassed, Rogers picked herself up and thanked the boy for his help. She hurriedly picked up everything she had dropped except, by inadvertence, the key fob, and went inside the gas station.

[4] Cookies in hand, Rogers left the gas station only to watch her car back out of the parking space and pull out of the gas station parking lot. She saw the boy in the driver's seat and the girl in the passenger's. "Are you serious?" Rogers yelped in exasperation. Tr. p. 16. "Bring my truck back!" *Id.* She ran to the

street and flagged a passing driver. The driver offered to call 911 but declined Rogers's invitation to pursue the thieves. Seeing her car turn south down a side street from 38th, Rogers ran to the intersection of 38th and the side street, but the thieves and her car were gone. Rogers returned to the gas station and called 911 herself. Sometime later, after a second call to 911, police arrived and assured Rogers they would do what they could.

[5] A few days later, Rogers had deactivated her stolen cell phone and was activating a new one. When the new phone synced with Rogers's cloud storage account, she noticed that ten or twenty pictures she had not seen before had been downloaded to the new phone. Together the pictures showed six or seven teenaged boys and two or three teenaged girls. Among them, Rogers identified the boy and girl from the gas station. Rogers concluded that the thieves had been using her old cell phone to take pictures of themselves and their friends, and the pictures had been automatically uploaded to her cloud storage account from the old phone before it was deactivated.

[6] Rogers printed out two pictures, one of the boy with two friends and one of the girl by herself, Ex. Vol., State's Exs. 1-2, and started asking friends and family around the city whether they knew either of the teenagers. Family members with children attending Lawrence Central High School identified the pair as students at that school. Rogers presented her findings to the police, whose investigation had not proceeded very far, or had not yet begun.

[7]     Detective Kevin Kern ("Kern") of the Indianapolis Metropolitan Police Department was assigned to Rogers's case on December 15, 2015, more than a week after the theft. The gas station at 38th and Oxford was known by police to retain its security camera footage for only three days before taping over it, so no help came from that quarter. Kern's first step was to speak with Rogers, who told him she had already identified the two thieves as students at Lawrence Central and gave him the pictures from her new phone.

[8]     Kern went to the school. It is impossible to say what Kern did there or with whom he spoke, because Kern would later contradict himself and other evidence multiple times on the witness stand in recounting his investigation. *Compare* Tr. p. 63 (Kern spoke with teacher of H.J. and S.M.) *with* Tr. p. 132 (Kern did not speak with teacher of H.J. and S.M.). In any event, whether by Rogers's efforts, Appellant's App. p. 25 (Kern's probable cause affidavit), or by Kern's, Tr. p. 40 (Kern's trial testimony), the boy in the picture was identified as H.J., and the girl as S.M.

[9]     On December 22, 2015, Kern spoke with S.M. and her mother at their home. S.M. denied any involvement in the theft. Mother and daughter directed Kern to an alibi witness, D.G., a school friend of S.M.'s. Kern called D.G. one morning,[1] recording the interview without D.G.'s knowledge or consent. D.G.

---

[1] In this S.M. was more fortunate than H.J., whose verifiable alibi—that, after being dropped off by his cousin, he spent the afternoon in question with friends at a large in-door sports and recreation complex—was never investigated *at all* by Kern. Tr. p. 126. Informed of the alibi two weeks before the delinquency petitions were filed, Kern nevertheless "figured the defense would explore that." Tr. p. 124.

would later testify that December 6 was her mother's birthday, and that D.G., S.M., and a third school friend spent a long weekend in one another's constant, uninterrupted company from Saturday, December 5, through Monday, December 7. The girls took a picture of themselves time-stamped a little before 3:00 P.M. on December 5, the day before the theft. Ex. Vol., Resp't's Ex. CC. Kern would later testify that D.G. told him the girls were not together the entire weekend. Kern was contradicted on this point by his own recording, which was not, however, made known to S.M. until months later. *See* ¶ 11 *infra*.

[10] On December 23, 2015, Kern submitted a probable cause affidavit accusing H.J. and S.M. of stealing Rogers's car. On February 5, 2016, the State filed a petition alleging S.M. to be a delinquent child for acts that would be Level 6 felony theft and Class A misdemeanor criminal trespass if done by an adult. On May 23, 2016, H.J. and S.M. appeared together for their joint delinquency hearing in Marion Superior Court.

[11] Kern was called by the State to testify. On cross-examination by counsel for H.J., Kern surprised counsel by revealing that he had recorded his interview with H.J. and his mother, and still had a copy of the recording in his possession. The same was true for his interview with S.M. and her mother. Counsel for neither respondent had ever been made aware of their existence. The delinquency hearing was continued ("bifurcated," in the language of the parties, Tr. p. 74) to give respondents the chance to review them. Over the next month, a total of *nine* recordings issued in a trickle from Kern to the prosecutor and then to respondents, including Kern's interview with D.G. None had been

disclosed to respondents. Kern and the prosecutor could not agree who was to blame. *Compare* Tr. p. 44 (Kern's testimony he did provide prosecutor with recordings) *with* Tr. pp. 111 (prosecutor's testimony Kern did not provide recordings), 119 (Kern's testimony he did not provide recordings).

[12] The delinquency hearing resumed on June 28, 2016. After all parties rested, the trial court heard argument and took the matter under advisement. On June 30, 2016, the trial court found both allegations true as to S.M. and adjudicated her delinquent accordingly. At a disposition hearing on August 15, 2016, the trial court put S.M. on probation, with a review hearing to be held ninety days later on November 14, 2016.

[13] S.M. timely appealed. She now challenges the true finding as unsupported by sufficient evidence.

## Standard of Review

[14] Though juvenile adjudications are not criminal matters, *Jordan v. State*, 512 N.E.2d 407, 409 (Ind. 1987), when the State petitions to have a child adjudicated delinquent for an act that would be a crime if done by an adult, due process requires the State to prove its case beyond a reasonable doubt. *Al-Saud v. State*, 658 N.E.2d 907, 908 (Ind. 1995) (citing *In re Winship*, 397 U.S. 358, 368 (1970)). When reviewing whether the State's evidence was sufficient to meet its burden, our standard is familiar. We view the facts and the reasonable inferences from them in the light most favorable to the true finding. *Id.* We neither reweigh the evidence nor re-evaluate witness credibility. *Id.* We will

affirm unless no reasonable fact-finder could have found the elements of the crime proved beyond a reasonable doubt. *Id.* We may uphold the judgment supported only by the uncorroborated testimony of a victim. *Bailey v. State*, 979 N.E.2d 133, 135 (Ind. 2012).

[15] S.M. admonishes us not to allow this deferential standard to become a mere "rubber stamp" for the trial court's decisions. Appellant's Br. at 15 (citing *Galloway v. State*, 938 N.E.2d 699, 709 (Ind. 2010) (analyzing standard for insanity defense in murder case)). While we *may* affirm a trial court's judgment in a case on the strength of a victim's uncorroborated testimony, S.M. argues, we *need* not do so in all cases, "[e]specially not this one." Appellant's Br. at 17.

[16] S.M. points us to language in *Gaddis v. State*, 253 Ind. 73, 251 N.E.2d 658 (1969), and *Manlove v. State*, 250 Ind. 70, 232 N.E.2d 874 (1968). Today, *Gaddis* stands for the narrow proposition that "incredibly dubious" testimony supports reversal. *Moore v. State*, 27 N.E.3d 749, 754–55 (Ind. 2015) (reviewing *Gaddis* and the "limited scope" of the incredible dubiosity rule developed from it). However, S.M. does not argue that Rogers's testimony was incredibly dubious. *Manlove* called for sharpened appellate review when all the evidence in support of a judgment was circumstantial. 250 Ind. at 79, 232 N.E.2d at 879. However, S.M. was adjudicated on the basis of direct evidence, Rogers's eyewitness testimony, and *Manlove* has been abrogated. *Green v. State*, 587 N.E.2d 1314, 1316 (Ind. 1992) ("[T]he standard applied in *Manlove* is no longer used by this Court . . . ."); *Biggerstaff v. State*, 432 N.E.2d 34, 36 (Ind. 1982) ("We no longer use [*Manlove*'s] standard . . . .").

[17] S.M. invites us, in effect, to hold that the State has forfeited its entitlement to our usual appellate deference by its wrongdoing, by Kern's "unorthodox shenanigans and paltry investigative efforts," Appellant's Br. at 13; *see also id.* at 8 (true finding not "reasonable under the totality of the circumstances surrounding the investigation and trial."). Without condoning the State's investigation in this case, we decline counsel's invitation because it is not the State's investigation that merits deference, but the trial court's judgment. Without a constitutional violation requiring suppression or a new trial, questions about how the investigation in a case was performed or not performed are irrelevant to the only dispositive legal question: Was there probative evidence such that a reasonable trier of fact could have found guilt beyond a reasonable doubt? It is to this question that we now turn.

## Discussion and Decision

[18] S.M. challenges only her identification by Rogers as the girl at the gas station on December 6, 2015. *See* Appellant's Br. at 16, Appellee's Br. at 7. Rogers had three distinct occasions to observe the girl: once as Rogers pulled into the gas station parking space and worried that the girl would ask her for money, once when she tripped outside the gas station and addressed the boy's offer to help her, and finally when she saw the girl sitting in the passenger's seat of her car as it backed out of the parking space and drove away. The impression produced by those observations was clear and distinct enough that Rogers, without prompting or suggestion by the State's agents, was able to pick out S.M. from a collection of ten to twenty pictures showing two to three different teenaged

girls. Rogers then identified S.M. at the delinquency hearing as the girl at the gas station. If believed, Rogers's testimony established S.M.'s guilt beyond a reasonable doubt. We will not re-evaluate Rogers's credibility on appeal.

S.M. argues that she is not attacking Rogers's credibility but the reliability of her testimony. Appellant's Br. at 16. S.M. argues further that Rogers's account was "certainly no more reliable" than that of S.M.'s alibi witness, D.G. *Id.* The latter argument is a clear request to reweigh the evidence, which we will not do.

The former argument cannot be taken on its own terms because S.M. actually challenges Rogers's credibility, her disclaimer of such a challenge notwithstanding. S.M.'s arguments on this point are that Rogers glanced only "briefly" at the girl at the gas station, that Rogers failed to mention to the 911 operator that one of the thieves was a girl, and that Rogers could only imprecisely describe the thieves' clothing to the 911 operator. Appellant's Br. at 8. For these reasons, S.M. argues, Rogers's testimony was not worthy of belief—that is, it was not credible. The trial court disagreed. Presented with no argument that Rogers's testimony was incredibly dubious, and certain that such an argument would fail even if presented, we will not disturb the court's judgment.

## Conclusion

As the prosecutor repeated no fewer than four times in his 150-word closing argument, "This case is about whether you believe [Mrs.] Rogers or not." Tr. p.

142. The trial court believed her, and we cannot say that no reasonable trier of fact could have done the same. Its judgment is therefore affirmed.

[22] Affirmed.

Baker, J., and Pyle, J., concur.