HARRY SPEARS *v.* STATE OF INDIANA.

[No. 179S13. Filed February 27, 1980. Rehearing granted April 30, 1980.]

*Steven L. Artrusi, Robert F. Gonderman,* of South Bend, for appellant.

*Theodore L. Sendak,* Attorney General, *Stephen J. Cuthbert,* Deputy Attorney General, for appellee.

HUNTER, J.—Defendant, Harry Spears, was convicted by a jury of assault with intent to kill, Ind. Code § 35-13-2-1 (Burns 1975), and murder in the second degree, Ind. Code § 35-1-54-1 (Burns 1975), and sentenced to two to fourteen years' and fifteen to twenty-five years' imprisonment respectively. He now appeals raising the following issues:

1.   Whether the trial court erred in refusing defendant's tendered instruction regarding circumstantial evidence;

2.   Whether the trial court erred in admitting certain evidence under the *res gestae* exception to the hearsay rule;

3.   Whether the prosecuting attorney was guilty of misconduct with regard to the failure to secure the attendance of a witness at trial;

4.   Whether the trial court's discovery order compelling defendant to hand statements of witnesses over to the state violated defendant's right against self-incrimination, right to counsel and the work product privilege;

5.   Whether the trial court's discovery order compelling disclosure of defendant's medical records constituted a violation of defendant's right against self-incrimination;

6.   Whether the trial court erred in allowing the state to call a witness whose name did not appear on the state's original witness list; and

7.   Whether the jury's verdict and the trial court's judgment of guilty

of assault with intent to kill is supported by sufficient evidence.

The facts most favorable to the state follow.

Defendant's wife, Vicki Lynn Spears, resided in room 315 of the Southern Hotel, a transient hotel in South Bend, Indiana. On July 18, 1977, at approximately 10:30 p.m., defendant and his wife fought in the lobby of the hotel. Vicki tore his shirt. The desk attendant, Dee Rose, phoned police who came and broke up the altercation and advised defendant to leave. Defendant later told police that after he left the building he reentered via a fire escape and went to room 314. Mike Ramenda had moved into room 314 of the Southern Hotel at Vicki Spear's request. There is an adjoining door between rooms 314 and 315. Two witnesses testified that they saw Ramenda in or around the Southern Hotel late in the evening of July 18. The witnesses testified that Ramenda was visibly drunk. The owner of a nearby tavern testified that Ramenda had been drinking heavily at his tavern all evening long and left about 11:00 p.m. on July 18. Defendant knocked on the door to room 314 and heard Ramenda tell Vicki to let defendant in. Defendant entered the room and fought with Vicki. He told police that he exchanged blows with Ramenda and exited the room. Ramenda followed defendant and threw a few more punches. Defendant said he then left by the fire escape. At 1:15 a.m., July 19, 1977, Dee Rose heard a "loud ker-thump" and immediately went upstairs to investigate. She saw Michael Ramenda lying unconscious on the floor between rooms 319 and 320. Ms. Rose phoned the police. Michael Ramenda was taken to a hospital where he died two days later. A pathologist testified that Ramenda had suffered two linear skull fractures which gave rise to an epidural hemorrhage resulting in brain-stem hemorrhage and death. The doctor stated that the fractures were consistent with contact between the skull and a flat object, such as a floor, but not a fist.

## I.

The evidence at trial which could have established that defendant killed Michael Ramenda was circumstantial evidence. There was direct evidence that defendant, Mrs. Spears and Ramenda fought, but no direct evidence linking that fight to the time and nature of Ramenda's fatal injuries. Regarding direct and circumstantial evidence, the trial court instructed the jury as follows:

"Evidence may be either direct or circumstantial. Direct evidence is evidence of a particular fact or circumstances which forms [sic] a subject of judicial investigation. Circumstantial evidence is evidence of other or collateral facts and circumstances, from which the particular fact, which forms the subject of judicial investigation, is or may be inferred to justify a conviction of the Defendant. No greater degree of certainty is required with the evidence of circumstantial [sic] than where it is direct, for, in either case, the jury must be convinced beyond a reasonable doubt of such Defendant's guilt as charged."

The language of the instruction was lifted from a tendered instruction submitted by defendant. The trial court omitted the following language from defendant's tendered instruction:

"In any case, on circumstantial evidence alone, the circumstances disclosed by the evidence must be of such character and strength as to exclude every reasonable hypothesis, except that of defendant's guilt; if the circumstances disclosed by the evidence can be explained on any reasonable hypothesis, except that of defendant's guilt, if the circumstances disclosed by the evidence can be explained on any reasonable theory consistent with defendant's innocence, he is entitled to an acquittal. But circumstantial evidence alone is enough to support a verdict of guilty of any crime, provided the jury believe beyond a reasonable doubt from the evidence given in the case that the accused is guilty as charged. The proof must not only coincide with the hypothesis of guilt, but it must be consistent [sic] with every other rational conclusion."

The following is the relevant portion of another instruction tendered by defendant:

"However, where the evidence is circumstantial in character, it must be of such inclusive [sic] and persuasive force that it tends to point surely and unerroringly [sic] to the guilt of the accused to such an extent that it excludes every reasonable hypothesis of innocence. Therefore, if circumstantial evidence in this case gives rise to two reasonable inferrences [sic], one of guilt and one of the defendant's innocence, you must acquit the defendant."

Defendant claims that it was error for the trial court to refuse to instruct the jury that circumstantial evidence must exclude every reasonable hypothesis of innocence beyond a reasonable doubt. In deter-

mining whether an instruction has been properly refused, we must determine:

"(1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support the giving of the instruction, [and] (3) whether the substance of the tendered instruction is covered by other instructions which are given." *Davis v. State*, (1976) 265 Ind. 476, 478, 355 N.E.2d 836, 838 [citations omitted].

It is current law that on appeal this Court will not adopt the test of exclusion of every reasonable hypothesis of innocence as a standard for review in sufficiency matters. *McAfee v. State*, (1973) 259 Ind. 687, 291 N.E.2d 554. (For a historical discussion of cases in that regard, see *Ruetz v. State*, (1978) 267 Ind. 42, 373 N.E.2d 152.) However, this Court has never departed from the conviction that the above standard is a proper one to be employed at the trial court and a defendant is entitled to an instruction to that effect. *Robinson v. State*, (1919) 188 Ind. 467, 124 N.E. 489; *Wantland v. State*, (1896) 145 Ind. 38, 43 N.E. 931.

Originally this Court had to be satisfied on appeal that circumstantial evidence had to exclude every reasonable hypothesis of defendant's innocence. *Cavender v. State*, (1890) 126 Ind. 47, 25 N.E. 875. In *Christen v. State*, (1950) 228 Ind. 30, 89 N.E.2d 445, this Court criticized cases which "seem to adopt" that proposition and, in so doing, "seem to rely upon the *Cavender* case." 228 Ind. at 38, 89 N.E.2d at 448. Included in that list of cases was *Robinson v. State, supra*. The Court indicated that those cases were subject to criticism to the extent that they were inconsistent with *Wrassman v. State*, (1921) 191 Ind. 399, 132 N.E. 673, and *Gears v. State*, (1931) 203 Ind. 380, 180 N.E. 585. However, the language of Judge Townsend made it clear that the *Robinson* case was consistent with the *Wrassman* rule:

"It certainly was not meant nor intended by the *Robinson* case to convey the impression that the rule quoted from the *Cavender* case is one which governs a court of review, in passing on the sufficiency of the evidence, in the same *sense* and in the same *manner* that it governs the trial court and jury." 191 Ind. at 403, 132 N.E.2d 674 [emphasis in original].

This distinction between the law regarding circumstantial evidence

which governs trial courts and that which governs appellate courts in Indiana was echoed in *Gears v. State, supra.* See also *Stuck v. State*, (1970) 255 Ind. 350, 264 N.E.2d 611.

We conclude that the language which the trial court deleted from defendant's tendered instruction correctly states the law. As stated above, the evidence was circumstantial in this case and, therefore, supported the giving of the omitted portions of defendant's tendered instruction.

The state claims that the instruction given adequately states the substantive law in this area and, therefore, defendant's claim does not meet the third part of the test in *Davis v. State, supra.* The state cites *Broecker v. State*, (1974) 161 Ind. App. 206, 314 N.E.2d 428, as authority for the correctness of the instruction given in this case. The state apparently misconstrues defendant's argument. The instruction given is not challenged. In fact, it was tendered by the defendant. Defendant challenges the refusal of a portion of his tendered instruction. The *Broecker* case is inapposite. In that case the defendant claimed that the trial court's instruction was an incorrect statement of the law, claiming that there is a distinction between the relative weight to be given to circumstantial evidence and direct evidence. That proposition is incorrect. The defendant did not ask for an "exclusion of every reasonable hypothesis of innocence" instruction in *Broecker*.

We do not find that the substance of defendant's tendered instruction was covered by instructions given by the court. The trial court erred in refusing to give defendant's tendered instruction regarding circumstantial evidence.

The evidence of the *actus reus* of second degree murder was proved only by circumstantial evidence and, therefore, this error relates only to defendant's second degree murder conviction. The evidence of the assault on Vicki Spears was direct. Defendant claims that any evidence of intent to kill was circumstantial and, therefore, the instruction would apply equally to that charge. The evidence from which intent could be inferred was direct. Thus, the instruction would not apply to the assault with intent to kill charge. To hold otherwise would require a circumstantial evidence instruction in every case involving a crime containing the

element of intent. Unnecessary confusion would result from such a course.

## II.

At trial the prosecuting attorney called Vicki Spears as a witness. Her name was called three times in open court and three times outside of the courtroom, but she did not appear. Subsequently, four witnesses testified that at the time Mike Ramenda was found in the hall Vicki Spears came out of her room hysterically screaming that her husband had beaten Ramenda or that "Harry did it." Defense counsel objected to this testimony as hearsay. The court admitted the testimony under the *res gestae* exception to the hearsay rule. Because of the possibility of Vicki Spears being available to testify at a second trial this issue may not arise. However, in the event she is not available, we shall settle the issue here.

This Court has stated:

"Utterances and exclamations of participants, or of persons acting in concert, made immediately before or after or in the execution of an act, which go to illustrate the character and quality of the act, are usually admissible on the ground that they are a part of the *res gestae*, and provable like any other fact that elucidates the issue. The rule, however, seems to be exclusive, that to render the expression or declaration of another admissible, the party making it must have been so related to the occurrence as to make his declaration a part of it. The test seems to be that to render the utterance, or declaration of another admissible, it must flow from one of the actors, or from one sustaining some relation to the trans-action, and be so intimately connected with the litigated act as to be the act speaking of itself through the witness, and not the witness speaking the words of another, employed concerning the act." *Indianapolis Street Railway Company v. Whitaker*, (1903) 160 Ind. 125, 127-8, 66 N.E. 433, 434.

Vicki Spears was not directly an actor or participant in the alleged fatal altercation between defendant and the decedent, Mike Ramenda. "[T]he declaration of a bystander is not admissible where it is not a part of the *res gestae*." *Red Cab, Inc. v. White*, (1938) 213 Ind. 269, 273, 12 N.E.2d 356, 358. Mrs. Spears made her utterance within a few minutes after the incident which resulted in Mike Ramenda's death. Since she had

been involved in an altercation with defendant in which Ramenda was involved in the evening of July 18, 1977, or in the early morning of July 19, 1977, she would appear to have been sufficiently related to the occurrence to qualify under the above test. Defendant does not argue that the statement was not sufficiently spontaneous to fit within the *res gestae* exception. *Kelley v. Dickerson*, (1938) 213 Ind. 624, 13 N.E.2d 535.

Defendant, however, challenges the admission of testimony regarding what Vicki Spears said on the grounds that she did not observe the alleged fatal fight between defendant and the decedent. While this issue has never been decided by this Court, the authorities are in accord that the out-of-court declarant must have personally observed the act or fact concerning which the declaration was made. VI WIGMORE on Evidence, § 1751(a), p. 222 (Chadbourn Ed. 1976); 29 Am. Jur. 2d Evidence § 724, p. 795; 31A C.J.S. Evidence § 410, p. 990.

"In order for a spontaneous statement to be admissible under this exception to the hearsay rule it must appear that the person who made the statement perceived the event which the statement explains or describes. The statement must be the spontaneous result of an occurrence operating upon the perceptive senses of the speaker, rather than the result of inference or surmise." *Watson v. State*, (1963) Alaska, 387 P. 2d 289, 291.

The Connecticut Supreme Court has held that the out-of-court statement cannot be a characterization of a sound; the declarant must have actually seen the event described. *Johnson v. Newell*, (1971) 160 Conn. 269, 278 A.2d 776.

Direct proof of the out-of-court declarant's personal observation is not necessary. *Ungefug v. D'Ambrosia*, (1967) 250 Cal. App. 2d 61, 58 Cal. Rptr. 223.

"[I]t is sufficient if it appears inferentially that the declarant personally observed such matters and that there is nothing to make a contrary inference more probable." *People v. Poland*, (1961) 22 Ill. 2d 175, 183, 174 N.E.2d 804, 808.

In the case at bar, defense counsel asked for an evidentiary hearing at which he intended to adduce testimony which would question the trustworthiness of Mrs. Spears's declaration, specifically whether she had witnessed defendant beating Mike Ramenda. The trial court refused

to grant this hearing. In defendant's offer to prove he stated he would have produced a statement which Vicki Spears gave to the South Bend police in which she stated that she did not see defendant assault the decedent. In fact she told the police that she was unconscious from the time defendant assaulted her until the time she found Mike Ramenda's body. Rather than appearing that Vicki observed defendant beat the decedent, the contary inference is rendered more probable by her statement to the police.

We are mindful that the admission of evidence under the *res gestae* exception is within the sound discretion of the trial court. *Walker v. State*, (1976) 265 Ind. 8, 349 N.E.2d 161. In light of the above factual circumstances, we hold that the trial court exceeded its discretion in this regard by failing to hold an evidentiary hearing to determine whether Mrs. Spears witnessed the event described by her declaration.

Our determination of the first two issues necessitates reversal of defendant's conviction for murder in the second degree. We now turn to the remaining issues which bear on defendant's conviction for assault with intent to kill.

### III.

As part of his objection to the admission of Vicki Spears's out-of-court declaration, defendant claims that the admission violated his constitutional right to confront witnesses against him. The hearsay rule has been developed not only to assure reliable testimony at trial, but to satisfy this Sixth Amendment guarantee as well. Our above discussion of the *res gestae* exception to the hearsay rule adequately covers the necessary safeguards. However, defendant also claims that the state did not put forth a good faith effort to locate Vicki Spears and secure her attendance at trial.

This issue is intimately intertwined with the above discussion of Mrs. Spears's out-of-court declarations and the hearsay rule. Indeed, had Vicki Spears been present at trial the problem would likely have been avoided.

The prosecutor attempted to serve a subpoena on Vicki Spears at her mother's residence in South Bend. Apparently knowledgeable that Vicki Spears did not live there, the prosecutor had the South Bend Police

Department make inquiries as to her whereabouts in the state of Florida. As observed above, the prosecutor called Mrs. Spears's name at trial and when there was no response, a bench warrant was issued. On July 13, 1978, a third party advised the prosecutor that Vicki Spears was not aware of the subpoena, was in New York and would be available to testify on July 18. The prosecutor informed neither the trial court nor defense counsel of this information.

July 13, 1978, was the last day evidence was heard in this case. The record does not affirmatively indicate that the prosecuting attorney in charge of this case was actually aware of Vicki Spears's whereabouts until after the evidence in this case was heard and concluded. On July 13, 1978, Vicki Spears was still an unavailable witness. While the prosecutor's subsequent failure to disclose the information is reprehensible, it does not change the facts at the time of trial, which indicate that the prosecutor was genuinely unaware of Mrs. Spears's whereabouts. It appears that her appearance would have delayed the trial another week. We find no trial court error in this regard.

IV.

Defendant claims that the trial court's discovery order compelling him to provide the state with copies of statements taken from witnesses violated his right against self-incrimination, his right to counsel and the work product privilege.

Reciprocity is the key element of criminal discovery in Indiana. In other words, this Court will require that discovery requirements be fairly balanced between the state and defendant. *State ex rel. Keller v. Criminal Court of Marion Co.*, (1974) 262 Ind. 420, 317 N.E.2d 433. Defendant does not challenge the discovery order in the case at bar under the "reciprocity" rule adopted by this Court. Instead defendant claims the order violated his right against self-incrimination.

The issue raised by defendant's allegation is whether witnesses' statements are protected under the Fifth Amendment to the United States Constitution. The United States Supreme Court has held that the Fifth Amendment constitutes a personal privilege which adheres basically to the person, not to incriminating information. *Couch v. United States*, (1973) 409 U.S. 322, 93 S. Ct. 611, 34

L. Ed. 2d 548. The Supreme Court has specifically held that compelling disclosure of a statement taken by defense counsel's investigator during an interview with a witness does not constitute a Fifth Amendment violation. *United States v. Nobles*, (1975) 422 U.S. 225, 95 S. Ct. 2160, 45 L. Ed. 2d 141.

Defendant's allegation that he was denied his right to counsel is substantially the same as his claim that the work product privilege was violated. Statements taken by an attorney are not privileged under the work product doctrine. *Goldberg v. United States*, (1976) 425 U.S. 94, 96 S. Ct. 1338, 47 L. Ed. 2d 603. The primary purpose of that doctrine is the "protection of the privacy of an attorney's mental processes." 425 U.S. at 106, 96 S. Ct. at 1346, 47 L. Ed. 2d at 615.

The compelled production of two witnesses' statements in the case at bar did harm neither to defendant's Fifth Amendment privilege nor to the work product doctrine.

## V.

Evidence must be of a "testimonial or communicative nature" to fall within the ambit of the Fifth Amendment. *United States v. Wade*, (1967) 388 U.S. 218, 221, 87 S. Ct. 1926, 1929, 18 L. Ed. 2d 1149, 1154; *Schmerber v. California*, (1966) 384 U.S. 757, 761, 86 S. Ct. 1826, 1830, 16 L. Ed. 2d 908, 914. Defendant alleges that his Fifth Amendment right against self-incrimination was violated by the trial court's order compelling discovery of certain of defendant's hospital records because "these mental records contained testimonial information conveyed by the defendant to the health care provider."

However, the testimonial nature of these medical records is not revealed by the record in this case. The medical records in question were not made a part of the trial record. We do know, from the order itself, that the records were those dealing with defendant's visit to the St. Joseph Hospital on or about July 19, 1977, the day or the day after the assault. Defendant sought treatment for injuries sustained in his altercation with Vicki Spears and Michael Ramenda. The treatment was for injuries of a physical nature and the testimonial nature of the records cannot be assumed. We can only speculate as to defendant's conversation with the attending physician

or physicians. At most it was an explanation that the injuries were sustained in a fight, a fact firmly established by other evidence. Speculation aside, failure of defendant to provide a copy of the records, or an affidavit attesting to their contents, precludes our review of this alleged error.

In defendant's reply brief, he asserts that treating this issue as waived would deny him the

> "opportunity to assert this error because the party to whom the discovery order was addressed, the hospital, did not see fit to provide the court an additional copy of the records so that it could be inserted in the record."

This argument ignores another vehicle for review, Ind. R. Tr. P. 59(D). An allegation of error based on matters outside the record can and must be supported by affidavits.

## VI.

Defendant next alleges that the trial court abused its discretion in allowing the state to add a witness to its witness list after the deadline date set out in the court's earlier discovery order. The order required an exchange of witness lists by June 10, 1978. On June 26, 1978, the state filed an additional list of witnesses naming Arnold Lewis as a witness for the first time. Lewis was called as a witness by the state and defendant objected on the basis of noncompliance with the discovery order. The terms of the order set forth a procedure for adding witnesses whose connection with the case was not apparent to the parties prior to June 10. The party seeking to add a witness would have to supply testimony, by affidavit and under oath, that the witness's name came to that party's attention after June 10. The state argued that Mr. Lewis's name came to the state's attention on June 23 as a result of reading a statement taken from Mr. Lewis by defendant. No affidavit to this effect was supplied to the court.

The trial court's wide discretionary latitude in discovery matters "is grounded in the inherent power of the trial court to guide and control the proceedings." *Johns v. State*, (1968) 251 Ind. 172, 179, 240 N.E.2d 60, 64. Defendant claims that a trial court abuses this discretion when it varies from the terms of a prior discovery order in allowing additional witnesses. We do not agree. In order to

control proceedings and promote the discovery of truth, a trial court must remain the master of its own order and will be granted deference in finding what constitutes substantial compliance with that order. "The sanctions for failure to comply with discovery orders are discretionary, not mandatory." *Popplewell v. State*, (1978) 269 Ind. 323, 381 N.E.2d 79, 82.

Defendant suggests that it was improper for the trial court to hold the state to something less than strict compliance with the discovery order when defendant had complied with the order completely, However, defendant does not point to unequal enforcement of the order nor does he suggest that he would have added witnesses if he had known of the trial court's leniency with regard to the order. Furthermore, defendant does not argue that he was surprised by the calling of Arnold Lewis as a witness. If he had been surprised, the proper remedy would be a motion for a continuance. *Siblisk v. State*, (1975) 263 Ind. 651, 336 N.E.2d 650. Nevertheless, there are no elements of surprise here. As noted above, defense counsel had already taken a statement from Mr. Lewis. The state's additional witness list was supplied on June 26, 1978, two weeks before Lewis testified on July 11, 1978.

We find no trial court error with regard to its discovery order.

## VII.

The last remaining issue in this case is whether defendant's conviction for assault with intent to kill is supported by sufficient evidence. In reviewing the sufficiency of the evidence, we are constrained to consider the evidence which is most favorable to the state, together with all reasonable and logical inferences to be drawn therefrom. Where there is substantial evidence of probative value supporting the jury's verdict, the conviction will not be set aside. *Henderson v. State*, (1976) 264 Ind. 334, 343 N.E.2d 776.

The evidence shows that defendant attacked Vicki Spears with a chair and he threw an ashtray at her. Cuts sutained by Vicki Spears were sufficient to sustain an inference that a deadly weapon was used in the assault. *Petillo v. State*, (1950) 228 Ind. 97, 89 N.E.2d 623. The element of intent to kill may be inferred from the use of a deadly weapon in a manner reasonably calculated to cause death. *Bradberry v. State*, (1977) 266 Ind. 530, 364 N.E.2d 1183. We find substantial evidence of probative value to support the jury's finding.

For the foregoing reasons, the judgment of the trial court, inasmuch as it found defendant guilty of murder in the second degree, is reversed and remanded for a new trial to be conducted in a manner not inconsistent with this opinion. The judgment of the trial court, inasmuch as it found defendant guilty of assault with intent to kill, is affirmed.

Judgment reversed in part, affirmed in part.

Givan, C.J., DeBruler, Prentice and Pivarnik, JJ., concur.

NOTE—Reported at 401 N.E.2d 331.