Gerald W. BIVINS, Appellant
(Defendant below),

v.

STATE of Indiana, Appellee
(Plaintiff below).

No. 1081S275.

Supreme Court of Indiana.

April 2, 1982.

David W. Lamont, Evansville, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Gerald W. Bivins, was convicted by a jury of robbery while armed with a deadly weapon, a class B felony. Ind.Code § 35–42–5–1 (Burns 1979 Repl.). He was sentenced to a period of thirteen years in the Indiana Department of Correction. In his direct appeal, he presents the following issues for our review:

1. Whether the trial court erred when it permitted the state to introduce slides containing a hair follicle found in the perpetrator's automobile and hair samples removed from defendant's head;

2. Whether the trial court erred when it permitted an expert witness to testify to matters regarding the reliability of comparative hair analysis identification;

3. Whether defendant's constitutional right against self-incrimination was violated when he was required to don the coat allegedly worn by the perpetrator;

4. Whether the court erred when it refused to give defendant's tendered instruction number 4 concerning the sufficiency of the evidence necessary to sustain a conviction;

5. Whether defendant was denied a fair trial by virtue of alleged prosecutorial misconduct occurring during final argument; and

6. Whether the evidence was sufficient to sustain defendant's conviction.

The record reveals that on December 9, 1980, Eugene Porter was robbed at gunpoint while tending the cash register at "Mr. Liquor," a carry-out liquor store located on First Avenue in Evansville, Indiana. Porter informed Evansville Police Officers the perpetrator had worn a stocking mask and baggy corduroy coat and had fled in a blue Mustang automobile, late 1960s vintage, lacking license plates and bearing a black vinyl roof. Police located an automobile matching the description; ownership was traced to George Willis, defendant's friend, and triggered the investigation which culminated in defendant's arrest and the conviction at issue.

## I.

During its case-in-chief, the state sought to introduce slides containing a hair follicle found in the perpetrator's automobile and hair samples taken from defendant's head. The evidence was tendered in the course of Evansville Police Officer Stanley Ford's testimony; Ford had sent the hair follicle, as well as the samples, to the Federal Bureau of Investigation's laboratory in Washington D. C. There, Agent Chester Blythe had placed the various hairs on slides, completed a microscopic comparative analysis of them, and returned the hair and slides, as well as the test results, to the Evansville Police Department by certified mail.

■ Both at trial and on appeal, defendant has argued the slides should not have been admitted because Officer Ford was unable to state from personal knowledge which slides contained which of the hairs he had mailed to the FBI. In support of his argument, defendant correctly asserts that a higher degree of scrutiny is imposed on the foundation or chain of custody necessary to the admission of fungible evidence, such as hair. *Cobb v. State*, (1980) Ind., 412 N.E.2d 728; *Graham v. State*, (1970) 253 Ind. 525, 255 N.E.2d 652.

The record reveals, however, that Agent Blythe's testimony concerning the chain of custody eliminated any doubts created by Ford's testimony. Ford testified particular hairs were placed in numbered envelopes; by reference to the specific numbered envelopes, Blythe established which hairs were on particular slides.

Defendant has not challenged any other aspect of the chain of custody of the slides, nor does the record reveal any omission in the chain. The trial court did not abuse its discretion in admitting the exhibits. *Johnson v. State*, (1977) 267 Ind. 415, 370 N.E.2d 892.

## II.

■ Defendant maintains the trial court erred when, over his objection, Agent Blythe was permitted to answer the following question:

Q. "During the approximately fifteen hundred times that you've had occasion to have two known hair samples [from two different individuals], how many times, if any, have you had a situation where both known hair samples had identical characteristics like in this situation?"

A. "To examine hairs that I know are from two different—I have encountered a situation where I did have hair that I knew were from two different people and I could not tell the hair samples apart on one occasion that I recall, that I know of."

Defendant reiterates his contention that the testimony was objectionable because it wrongfully established a scientific impossibility: that a positive identification can be made through hair comparison analysis.

Whether Agent Blythe's testimony can be read to express the proposition defendant attributes to it is a question we need not decide. Both prior and subsequent to the above testimony, expert witness Blythe had unequivocally indicated that a positive identification could not be made through comparative hair analysis. In this context, which included thorough cross-examination of Blythe by defendant's counsel, Blythe's testimony simply was directed toward the weight to be accorded his analysis and conclusion; consequently, it was properly admitted. *Lamar v. State*, (1977) 266 Ind. 689, 366 N.E.2d 652.

**390**

## III.

■ Defendant next asserts his constitutional right against self-incrimination was violated when, during the state's case-in-chief, he was required to don the corduroy coat worn by the perpetrator. Via the demonstration the state sought to facilitate Porter's identification of defendant as the perpetrator; Porter was unable to positively identify defendant after he had donned the coat.

While the precise question before us is one of first impression, the constitutional principles upon which its resolution hinges are well settled. The Fifth Amendment to the United States Constitution, as well as Article One, Section Fourteen of the Indiana Constitution, prohibit compulsion of statements or actions by a defendant which constitute communications or are testimonial in nature. The constitutional prohibitions, however, are not violated when a defendant is compelled to speak or act in a manner which makes himself the source of physical evidence. *Schmerber v. California*, (1966) 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908; *Frances v. State*, (1974) 262 Ind. 353, 316 N.E.2d 364; *Wooten v. State*, (1981) Ind.App., 418 N.E.2d 538; *see also*, 8 Wigmore, *Evidence* § 2265, p. 386 (Chadbourn rev. 1961). In our application of these principles, this jurisdiction has held the constitutional privilege is not violated if a defendant is compelled to provide fingerprints, a handwriting sample, or a voice exemplar; nor has this jurisdiction found a violation of the privilege when a defendant is required to stand, expose a tattoo, or exhibit his hands while in court. *Frances v. State, supra; Hollars v. State*, (1972) 259 Ind. 229, 286 N.E.2d 166; *Wooten v. State, supra; Flynn v. State*, (1980) Ind.App., 412 N.E.2d 284; *Springer v. State*, (1978) Ind. App., 372 N.E.2d 466.

In *Holt v. United States*, (1910) 218 U.S. 245, 252–3, 31 S.Ct. 2, 6, 54 L.Ed. 1021, 1030, Justice Holmes dismissed as "an extravagant extension of the 5th Amendment" the claim that defendant's privilege was violated by testimony that the blouse worn by the perpetrator had fit defendant when he donned it. We do not subscribe wholesale to that proposition, for, depending on the circumstances, any particular action required of a defendant may or may not be testimonial in nature. *See, e.g., Davis v. Israel*, (E.D.Wis.1978) 453 F.Supp. 1316.

Here, however, we conclude the defendant's privilege against self-incrimination was not violated when, at trial, he was compelled to don the corduroy coat worn by the perpetrator. By his action, he communicated no information; rather, he merely constituted physical evidence by which the eyewitness could compare his appearance with that of the perpetrator. Other jurisdictions have reached a similar conclusion. *United States v. Satterfield*, (9th Cir. 1978) 572 F.2d 687; *United States v. Turner* (4th Cir. 1973) 472 F.2d 958; *Vigil v. People*, (1956) 134 Colo. 126, 300 P.2d 545; *Morris v. State*, (Fla.App.1966) 184 So.2d 199; *State v. Williams*, (1976) 307 Minn. 191, 239 N.W.2d 222; *State v. Dean*, (Mo.1966) 400 S.W.2d 413; *but see, Ward v. State*, (1924) 27 Okla.Cr. 362, 228 P. 498.

The trial court did not err.

## IV.

■ Defendant asserts the trial court erred when it refused to give his tendered instruction number 4, which read:

"I instruct you that your verdict should not be based upon mere suspicion, possibility, guesswork or conjecture. Mere opportunity to commit the crime charged is not enough to justify a verdict of guilty in this case, and unless you believe the evidence proves the defendant guilty of the offense charged, beyond a reasonable doubt, you should find the defendant not guilty."

Defendant maintains the substantive matters contained in the instruction were not adequately covered in other instructions.

The record reveals, however, the trial court gave a lengthy instruction on the reasonable doubt standard of proof necessary for a conviction. This Court recently held that it is not necessary for the jury to be instructed on the matters contained in defendant's tendered instruction if an ex-

tensive instruction on the reasonable doubt standard is given. *Showecker v. State,* (1982) Ind., 432 N.E.2d 1340; *compare, Spears v. State,* (1980) Ind., 401 N.E.2d 331; *Nelson v. State,* (1980) Ind.App., 413 N.E.2d 988. The trial court did not err when it failed to give the instruction.

### V.

Defendant maintains that prosecutorial misconduct during final argument placed him in grave peril and denied him a fair trial. Defendant's allegation involves statements made by the deputy prosecutor while interposing objections to defendant's final argument. The record reads in pertinent part:

[MR. LAMONT, DEFENSE COUNSEL]: "According to some authorities, the investigator can only assert the possibility that the same individual once owned both the disputed and the identified hair. These experts believe that hair from the same source differ nearly as much between themselves as they differ from selected hairs that originated elsewhere. In other words, if you took a hair from this side of my head and this side of my head, there's a good chance that they wouldn't be alike or they might be alike. Objections to this evidence are, however, usually referred to its weight. In other words, is it definite evidence of proof beyond a reasonable doubt? And we heard the FBI Agent, Mr. Blythe, say that it is not. It is not positive identification."

MR. LEVCO [DEPUTY PROSECUTOR]: "I'm going to object. He did not ... Mr. Blythe did not say it wasn't proof beyond a reasonable doubt. That's mis-stating the evidence. He said it's not proof beyond any doubt whatsoever."

THE COURT: "The objection will be overruled. The jury will remember the evidence as they remember it. Your collective memories of what the evidence is is what we're interested in, Ladies and Gentlemen."

CLOSING ARGUMENT BY MR. LAMONT CONTINUED: "In addition, I would like to read the sentence from his report so that you will hear it once again—it should be noted that hair comparisons do not constitute a basis for positive personal identification. They are not like fingerprints, they are not positive personal identification. He even testified he once had hairs from two known people, two hairs from the same person, excuse me, and he made a mistake, he couldn't identify them."

MR. LEVCO: "I'm going to object again. He did not say that he made a mistake. I don't believe he can mis-state the evidence to the jury on final argument."

THE COURT: "The objection is overruled. He is allowed to comment on the evidence. Ladies and Gentlemen, you will remember the evidence as you remember it."

As is apparent from the above colloquy, defendant neither moved for a mistrial nor presented any objection to the court on the basis of the prosecutor's remarks. Defendant has consequently waived the issue presented for review. *Duncan v. State,* (1980) Ind., 412 N.E.2d 770; *Holland v. State,* (1976) 171 Ind.App. 276, 356 N.E.2d 686. The trial court properly informed the jury to concentrate on their personal recollection of the evidence. There was no error here.

### VI.

Defendant asserts the evidence was not sufficient to support the jury's conclusion he was guilty of robbery while armed with a deadly weapon. In part, he postures his contention as a challenge to the trial court's failure to grant his motion for judgment on the evidence entered at the close of the state's case; any error with respect to the court's denial of his motion for judgment on the evidence has been waived by virtue of defendant's presentation of evidence in his own behalf. *Parker v. State,* (1976) 265 Ind. 595, 358 N.E.2d 110; *Ward v. State,* (1965) 246 Ind. 374, 205 N.E.2d 148.

It is well established that when this Court is confronted with a challenge to the sufficiency of the evidence, we are required

to examine the evidence most favorable to the fact-finder's conclusion, together with the reasonable inferences arising therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the fact-finder's conclusion defendant was guilty beyond a reasonable doubt, it will not be disturbed. *Easley v. State,* (1981) Ind., 427 N.E.2d 435; *Spears v. State,* (1980) Ind., 401 N.E.2d 331; *Ruetz v. State,* (1978) 268 Ind. 42, 373 N.E.2d 152. This standard of review prevails even though circumstantial evidence gives rise to conflicting inferences of both guilt and innocence. *Id.* Defendant's reliance on *Manlove v. State,* (1968) 250 Ind. 70, 232 N.E.2d 874, is misplaced; the standard enunciated therein governs the assessment of evidence at the trial court level. *Easley v. State, supra; Spears v. State, supra.*

Here, the record reveals ownership of the blue Mustang automobile in which the perpetrator fled was traced to defendant's friend, George Willis. Initially, charges for the instant crime were filed against both defendant and Willis, who had a prior criminal record. The charges against Willis, who testified at trial, were ultimately dismissed. Willis testified defendant had told him he had committed a robbery.

He testified that on the night of December 9, 1980, he agreed that defendant could use the Mustang automobile; meanwhile, Willis attended a birthday party at Wally's Tavern in Evansville. According to Willis, defendant arrived at the party and informed him the car had broken down and that defendant had "left it parked." Diana Gibson, who also attended the birthday party, corroborated Willis's version of these events.

Later that same evening, Willis was informed by defendant the car had been towed away; the next morning the two men learned the police had removed the vehicle.

According to Willis, he questioned defendant concerning the reason the police might have towed the vehicle. In response to his inquiries, defendant eventually told him he had robbed a liquor store while using the vehicle.

The record also reveals police discovered a stocking on the floor of the automobile; attached to the stocking was a hair follicle. Samples of defendant's and Willis's hair, as well as the stocking and follicle, were sent to the FBI, where Agent Blythe examined them. Based on his microscopic analysis, he concluded the hair found on the stocking was identical in characteristics to samples taken from defendant; he also indicated Willis's hair bore characteristics unlike those found in the hair taken from the stocking.

Similarly, eyewitness Porter indicated that Willis, after donning the coat worn by the perpetrator, did not resemble the man who had robbed him; when defendant donned the coat, Porter was unable to say whether defendant was or was not the perpetrator. The physical characteristics which Porter attributed to the perpetrator immediately after the crime—thin and approximately six feet tall—generally matched defendant's physical makeup. Porter also identified the corduroy coat and stocking which had been recovered from the automobile as similar to those which the perpetrator had worn.

Based on this evidence, we cannot say the jury's conclusion that defendant committed the crime is necessarily erroneous. Albeit circumstantial in nature, there is substantial evidence of probative value to establish defendant's identity as the perpetrator. *Compare, Easley v. State supra; Munsey v. State,* (1981) Ind., 421 N.E.2d 1115; *Tippett v. State,* (1980) Ind., 400 N.E.2d 1115.

Defendant's arguments to the contrary rest on challenges to the credibility of Willis, the inability of Porter to positively identify him, and the reliability of comparative hair analysis. These matters were fully explored during cross-examination. It is not our prerogative to interpose our assessment of the weight to be accorded evidence or the credibility to be attributed to witnesses, whose demeanor was viewed by the jury. *Munsey v. State, supra; Muse v.*

*State*, (1981) Ind., 419 N.E.2d 1302. Defendant's arguments must fail.

For all the foregoing reasons, there was no trial court error and the judgment of the trial court is affirmed.

Judgment affirmed.

GIVAN, C. J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.