**Delbert SAVAGE, Appellant–Defendant,**

v.

**STATE of Indiana, Appellee.**

No. 49A02–9309–CR–502.

Court of Appeals of Indiana, Second District.

May 19, 1995.

John P. Woods, Woods and Woods, Indianapolis, for appellant.

Pamela Carter, Atty. Gen., Dana A. Childress–Jones, Deputy Atty. Gen., Office of Atty. Gen., Indianapolis, for appellee.

## OPINION

KIRSCH, Judge.

Delbert Savage (Savage) appeals his convictions for reckless homicide [1] and criminal recklessness, [2] as well as the trial court's order requiring him to pay $164,998.59 in restitution to the Indiana Family and Social Services Administration on behalf of Medicaid.

Savage presents two issues for our review, which we restate as follows: (1) whether sufficient evidence supports his convictions for reckless homicide and criminal recklessness; [3] and (2) whether the trial court's order requiring him to pay restitution in the amount of $164,998.59 was contrary to law and an abuse of its discretion in light of his earning capacity and potential.

At approximately midnight on May 10, 1992, Savage was the driver and only occupant of a pick-up truck which collided with a passenger car at the intersection of Collier Street and Werges Avenue in Marion County. The driver of the car died as a result of injuries sustained in the collision. One of the surviving passengers sustained serious injuries.

The State charged Savage with reckless homicide and criminal recklessness stemming from the collision. Savage waived his right to a jury trial, after which the trial court heard the case. No one involved in the collision testified at trial regarding the impact. However, two men testified that they observed a blue four-wheel drive Chevy pick-up disregard a stop sign at the intersection one block east of the collision and continue westbound toward the intersection of Collier and Werges. Seconds later, both men heard a loud crash, but neither saw the impact. Both raced to the scene after hearing the collision, and both testified that the truck involved in the collision was the same truck they saw seconds before they heard the crash. One of the men testified that the truck had been travelling at approximately fifty miles per hour, while the other testified that the truck was "probably travelling faster" than the speed limit. Record at 145. The speed limit on Werges is thirty miles per hour.

The State also introduced testimony from the investigating police officer, who, without objection, opined that Savage was travelling faster than thirty miles per hour at the time of the collision and that he disregarded a stop sign before entering the intersection. His investigation consisted of an examination of the accident scene, an examination of the condition of the vehicles, and discussions with another officer and witnesses. He did not perform a formal accident reconstruction, nor did he make any formal speed calculations. [4]

At the close of the State's case, Savage moved for a "dismissal and an acquittal on the evidence". Record at 221. The court denied Savage's motion, and the defendant chose not to present any evidence. The trial court convicted Savage of reckless homicide and criminal recklessness, and sentenced him to six years imprisonment for reckless homicide, and one and one-half years for criminal recklessness. The trial judge apparently merged those sentences, suspending two years of the six years ordered.

---

1. "A person who recklessly kills another human being commits reckless homicide, a Class C felony." I.C. 35–42–1–5 (Burns Code Ed.Repl. 1994).

2. "A person who recklessly, knowingly, or intentionally performs ... An act that creates a substantial risk of bodily injury to another person ... commits criminal recklessness, a Class B misdemeanor. However, the offense is a ... Class A misdemeanor if the conduct includes the use of a vehicle[.]" I.C. 35–42–2–2(b) (Burns Code Ed.Repl.1994).

3. Savage makes no argument that the two convictions run afoul of double jeopardy prohibitions against imposing two punishments for a single act of recklessness. In any event, however, it appears that the trial court merged the two offenses for purposes of sentencing.

4. The officer testified that, given the information he had, it was impossible to perform a speed estimate. The officer's investigation did not reveal any skid marks for either vehicle.

A few weeks later, the trial court conducted a restitution hearing, at which the State introduced a letter indicating that Medicaid had paid $164,998.59 for accident-related medical claims on behalf of the severely injured passenger. The passenger testified at the hearing that she was unable to work, that she had to relinquish custody of her three year-old daughter, and that she was receiving Social Security payments, all as a result of the accident. At the conclusion of the hearing, the court ordered Savage to pay $164,998.59 in restitution to the Indiana Family and Social Services Administration (IFSSA) on behalf of Medicaid. Before incarceration, Savage was a machine operator whose monthly income was $1,000, and whose monthly obligations varied from $800 to $1000.

## I. SUFFICIENCY OF THE EVIDENCE

■ Savage argues that the evidence does not support his convictions for reckless homicide and criminal recklessness. In reviewing Savage's convictions, this court will not re-weigh the evidence, nor will we judge the credibility of witnesses. *Miller v. State* (1994) 2d Dist.Ind.App., 634 N.E.2d 57, 62. Rather, we consider only that evidence favorable to the trial court's judgment, and if there is substantial evidence of probative value to support the conviction, we must affirm. *Id.* at 62–63.

Without eyewitnesses, the State's case is circumstantial. Nevertheless, reviewing the evidence favorable to the convictions, we find ample support for the judgment.

### Lack of Eyewitness Testimony

■ Savage first argues that the judgment is not supported by sufficient evidence because the State failed to produce any eyewit-

nesses to the collision, and, therefore, was unable to offer any evidence about how the accident occurred. We disagree.

Savage relies upon *Hardesty v. State* (1967) 249 Ind. 518, 231 N.E.2d 510. In *Hardesty*, our Supreme Court reversed a defendant's reckless homicide conviction arising out of his operation of a motor vehicle. At trial, the State offered eyewitness testimony by a person who did not see the accident, but who observed the defendant's driving a few minutes before impact.[5] The State presented no expert testimony.[6] In reversing the conviction, our Supreme Court held that the State did not sustain the burden of proof necessary in a circumstantial evidence case because the witness "lost all visual contact of appellant's operation of appellant's vehicle prior to the collision" and because "it was a matter of minutes before [the witness] arrived at the scene of the collision[.]" *Id.* 231 N.E.2d at 513.

In the case before us, two of the State's witnesses saw Savage disregard a stop sign at an intersection one block east of the accident scene. However, neither of them testified that they saw Savage disregard the stop sign at the intersection where the collision occurred, and neither of them actually saw the collision. Had the State relied solely upon the testimony of these two witnesses, the guilt determination would have been suspect under the holding of *Hardesty*. In so stating, we do not conclude that the "reasonable hypothesis of innocence" standard alluded to in *Hardesty* was determinative of the result in that case.

In *Hardesty*, the court noted that in a circumstantial evidence case, the evidence must exclude "every other reasonable inference of innocence". 231 N.E.2d at 512. The

---

**5.** A witness named Bailey testified that he witnessed a car behind him. As it approached, Bailey ascertained that it was a red Dodge convertible. He also identified the driver as having dark hair and wearing a white shirt. Bailey then pulled over to the side of the road and the Dodge " 'shot by him at a great rate of speed', 65–70 m.p.h.....'' *Hardesty*, 231 N.E.2d at 511. Bailey then testified that the Dodge accelerated, "fish-tailed" and moved to the center of the road. *Id.* He also saw the Dodge disregard a four-way stop sign before speeding out of sight. After a brief stop at a friend's house, Bailey proceeded

along the same route as that previously taken by the Dodge. Later, he came upon the scene of a two-car collision. One of the cars was the decedent's station wagon, and the other was a red Dodge meeting the same description as the one which had earlier passed him.

**6.** The only other additional testimony about speed or position of the vehicles before impact revealed that there was debris on both sides of the center line and that there were skid marks, apparently made by the Dodge.

appellate review standard which was applied, however, was the standard which continues to control to this date. As stated in *Bivins v. State* (1982) Ind., 433 N.E.2d 387, 391–92:

> "It is well established that when this Court is confronted with a challenge to the sufficiency of the evidence, we are required to examine the evidence most favorable to the fact-finder's conclusion, together with the reasonable inferences arising therefrom. If, from that viewpoint, there is substantial evidence of probative value to support the fact-finder's conclusion defendant was guilty beyond a reasonable doubt, it will not be disturbed. [Citations omitted.] This standard of review prevails even though circumstantial evidence gives rise to conflicting inferences of both guilt and innocence. *Id.* Defendant's reliance on *Manlove v. State*, (1968) 250 Ind. 70, 232 N.E.2d 874, is misplaced; the standard enunciated therein governs the assessment of evidence at the trial court level."

However, unlike the situation in *Hardesty*,[7] the State in this case offered additional testimony from a trained accident investigator, who explained and interpreted the evidence that his investigation at the accident scene revealed.[8] Consequently, Savage's reliance on *Hardesty* is inapposite.

### Investigating Officer's Testimony

Officer Dale Braun of the Marion County Sheriff's Department investigated the accident scene at Collier and Werges. At trial, he testified that, in his opinion, Savage was travelling faster than thirty miles per hour at the point of impact and that he could not have stopped at the stop sign before entering the intersection. Savage contends that Officer Braun's testimony is insufficient to support the judgment. Again, we disagree.

■ Savage first asserts that Officer Braun's opinion lacks the requisite scientific certainty necessary for him to render his opinion because he did not perform any formal speed calculation or accident reconstruction. Our research does not reveal any decision limiting an expert only to those opinions which can be stated with reasonable "scientific certainty." Our Supreme Court's opinion in *Strong v. State* (1989) Ind., 538 N.E.2d 924, 930–32, provides clear and definitive authority with regard to the requisite degree of certainty necessary to support an expert's opinion. Absolute certainty is not required. *Strong, supra* at 930 (citing *Church v. State* (1984) Ind., 471 N.E.2d 306). In *Strong*, our Supreme Court relied upon and endorsed Justice Hunter's plurality opinion in *Noblesville Casting Div. of TRW v. Prince* (1982) Ind., 438 N.E.2d 722, in which he noted as follows:

> " '[N]o threshold level of certainty or conclusiveness is required in an expert's opinion as a prerequisite to its admissibility. Assuming the subject matter is one which is appropriate for expert testimony and that a proper foundation has been laid, the expert's opinion or conclusion that, in the context of the facts before the witness, a particular proposition is 'possible,' 'could have been,' 'probable,' or 'reasonably certain' all serve to assist the finder of fact in intelligently resolving the material factual questions. The degree of certainty in which an opinion or conclusion is expressed concerns the weight to be accorded the testimony, which is a matter for the jury to resolve.' " *Strong, supra* at 931.

[4, 5] In order to have probative value, it is not necessary that an admissible opinion be expressed with any degree of "certainty". The law deals in probabilities, not mere possibilities or, at the other extreme, with certainties. *See Beaman v. Hedrick* (1970) 146 Ind.App. 404, 255 N.E.2d 828. To be sure, the totality of the evidence in a criminal case must be sufficient to convince the trier of fact that the defendant is guilty beyond a reason-

---

7. In *Hardesty*, the State relied upon the eyewitness testimony of Bailey. The State did not introduce any other evidence except for testimony that there was debris on both sides of the center line and that there were skid marks, apparently made by the appellant's car, which straddled the center line. Specifically, the court noted that, "[t]here was no evidence presented, save for the skid marks, tending to establish the speed or position of either car just previous to the impact. In addition, there was no expert testimony to interpret the skid marks or to explain what, if anything, they indicated." *Hardesty*, 231 N.E.2d at 512.

8. *See infra*, "Investigating Officer's Testimony[.]"

able doubt. However, the admissibility of any particular evidence is not subjected to that standard.

Rule 401 of the new Indiana Rules of Evidence makes it clear that evidence is relevant, and therefore admissible, if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

In this case, the record indicates that Officer Braun did not testify as an expert in accident reconstruction or speed calculation. Rather, he was called upon to render an opinion based upon his experience as a police officer and a seasoned accident scene investigator.[9] Regardless, Officer Braun's opinion must have been supported to a reasonable probability to avoid being based solely upon speculation or conjecture. The lack of a formal accident reconstruction or speed calculation does not render Officer Braun's opinion without probative value. While he did not perform either a formal accident reconstruction or a speed calculation, his opinion was based upon his independent investigation of the scene, the comparative positions of the vehicles in relation to the point of impact, and the type and extent of damage each vehicle sustained. Moreover, his opinion brought to bear his years of experience in observing accident scenes and damage caused by various types of impacts.

We conclude that Officer Braun's opinion was qualified to the requisite degree of probability necessary for a police officer rendering an opinion as an accident scene investigator. The weight of his opinion was a matter properly for the trial judge's consideration as the trier of fact. We will not re-examine either Officer Braun's credibility or the weight the trial judge should have afforded

his opinion. *Strong, supra* at 931 (citing *Prince, supra,* 438 N.E.2d 722).

■ Next, it is argued that Officer Braun's opinion failed to show that Savage's driving met the statutory definition of recklessness. Savage claims that the evidence at trial merely demonstrated negligence. Under Indiana law, a person is reckless if he "engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct." I.C. 35–41–2–2(c) (Burns Code Ed.Repl.1994). *See also Miller, supra,* 634 N.E.2d at 63. Such conduct will support a conviction for reckless homicide if it results in the death of another. I.C. 35–42–1–5 (Burns Code Ed.Repl.1994). *See also McClaskey v. State* (1989) Ind., 540 N.E.2d 41; *Warner v. State* (1991) 3d Dist.Ind.App., 577 N.E.2d 267, 269.

Savage argues that "[a] slight deviation from the [speed] limit does not thereby create a great risk of danger and, alternatively, it is conceivable that some violations are due to inadvertence." *Taylor v. State* (1983) 4th Dist.Ind.App., 457 N.E.2d 594, 598. He also contends that his actions were merely negligent because he was unfamiliar with the intersection, and a person cannot be reckless with regard to a potential harm unknown to him.[10] We disagree with both contentions.

■ The trier of fact determines whether the defendant's conduct meets the statutory definition of recklessness. As the trier of fact, the trial judge properly could infer from Officer Braun's testimony that Savage was traveling at more than a "slight deviation from the speed limit" at the time of the collision. Officer Braun testified that he be-

---

**9.** Officer Braun did not perform a formal accident reconstruction or speed calculation, nor did the State formally tender Officer Braun as an expert witness in speed calculation or accident reconstruction. Officer Braun testified that his opinion was based upon his "experience in seeing a lot of accidents." Record at 211.

**10.** For this proposition, Savage cites *Wallace v. State* (1990) 1st Dist.Ind.App., 558 N.E.2d 864, 865. In *Wallace,* this court determined that a driver's failure to check to see if the lane to his right was clear before changing lanes was not

such a deviation from acceptable standards of conduct to be labelled "reckless." This case is not similar. A driver who speeds and who disregards stop signs creates a situation in which his disregard of potential harm is a substantial deviation from acceptable standards of conduct, and is considered reckless even if the driver did not intend or even contemplate that the conduct would endanger himself or others. Accordingly, Savage's reliance upon the proposition stated in *Wallace* is misplaced.

lieved the truck was traveling faster than thirty miles per hour, but he simply could not state with any accuracy the truck's actual speed. The degree of deviation in speed is a matter for the trier of fact. In this case, the trial judge determined that the truck's speed was high enough to meet the statutory definition of recklessness. We will not reweigh the evidence in that regard.

Further, the record reveals that Savage presented evidence of his unfamiliarity with the area. In addition to Officer Braun's opinion testimony discussed above, we note testimony presented to the trial court indicating that two witnesses testified that Savage was travelling faster than thirty miles per hour only a short distance from the point of impact. We also note that testimony revealed Savage disregarded a stop sign at an intersection one block east of the accident scene and that the truck continued toward the intersection of Collier and Werges. Moreover, witnesses identified Savage's damaged truck at the accident scene as the same blue Chevy pick-up they had seen on Werges only seconds before.

Sufficient evidence was before the trial judge from which she, sitting as the trier of fact, could infer that Savage's conduct was not merely negligent. She properly could have inferred that he operated his truck with a plain, conscious, and unjustifiable disregard of the harm that might result, and that his actions deviated from acceptable standards for driving a motor vehicle.

The trial judge's determinations of guilt beyond a reasonable doubt are affirmed.

## II. RESTITUTION

Savage next argues that the trial court's decision ordering him to pay $164,998.59 in restitution to IFSSA on behalf of Medicaid [11] is contrary to law and an abuse of discretion. Based upon his earning potential and work history, Savage contends that it is impossible for him to pay such an amount.

A trial court has the authority to order that one convicted of a felony or misdemeanor make restitution to the victim as part of his sentence pursuant to I.C. 35–50–5–3(a),[12] or as a condition of probation pursuant to I.C. 35–38–2–2.3(a)(5).[13] See Reinbold v. State (1990), Ind., 555 N.E.2d 463, 469. It is apparent from the record that the trial court in this case ordered restitution pursuant to an order of probation. When a trial court orders restitution as a condition of probation, I.C. 35–38–2–2.3(a)(5) requires that the amount of restitution not exceed an amount the defendant can or will be able to pay.[14] See Miller v. State (1986) Ind., 502 N.E.2d 92, 96.

The order of restitution is a matter within the trial court's discretion. Here, the trial court ordered restitution in the amount of $164,998.59. The evidence is undisputed that Savage has never earned more than $1,000 per month and that his child support and living expenses were $800 to $1,000 per month. Assuming that Savage can pay $200 per month and that no interest accrues, it will take 68 years and 9 months for him to pay off the restitution amount.

11. The value of the medical services provided is a proper subject of restitution to the provider. In such a case the provider is a "victim" within the intendment of the statute. Reinbold v. State (1990) Ind., 555 N.E.2d 463, 469.

12. "In addition to any sentence imposed under this article for a felony or misdemeanor, the court may, as a condition of probation or without placing the person on probation, order the person to make restitution to the victim of the crime." (Burns Code Ed.Repl.1994).

13. "As a condition of probation, the court may require a person to do a combination of the following: ... Make restitution or reparation to the victim of the crime for damage or injury that

was sustained by the victim. When restitution or reparation is a condition of probation, the court shall fix the amount, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance." (Burns Code Ed.Repl.1994).

14. This court has held that restitution imposed upon a defendant with an executed sentence pursuant to I.C. 35–50–5–3 does not require the trial court to inquire into the defendant's ability to pay. Bitner v. State (1989), 2d Dist.Ind.App., 546 N.E.2d 117. Presumably, an attempt to enforce a restitution order against such a defendant would be subject to a defense, at least temporarily, of inability to pay.

The trial court ordered restitution as a condition of probation. IC 35–38–2–2.3(a)(5) requires that the amount of restitution not exceed the amount that the defendant can or will be able to pay. An order of restitution that requires that the defendant pay 100% of his disposable income for a period in excess of his life expectancy is manifestly unreasonable, an abuse of discretion and contrary to law.

The judgment with respect to the conviction is affirmed. The judgment is reversed with respect to the order of restitution. The cause is remanded for further proceedings and a redetermination of the restitution, if any, which is to be required of Savage.

STATON, J., concurs.

SULLIVAN, J., concurs in part and dissents in part, with separate opinion.

SULLIVAN, Judge, concurring in part and dissenting in part.

I fully concur in Part I of the majority opinion. I must respectfully dissent, however, with respect to the rationale upon which the majority reverses the restitution order.

As noted, "[w]hen a trial court orders restitution as a condition of probation, I.C. 35–38–2–2.3(5) requires that the amount of restitution not exceed an amount the defendant can or will be able to pay. *See Miller v. State* (1986) Ind., 502 N.E.2d 92, 96." This court also has determined that the trial court must hold a hearing to determine the amount of restitution the defendant can or will be able to pay in order to satisfy equal protection concerns. *Sales v. State* (1984) Ind. App., 464 N.E.2d 1336. Additionally, this court has determined that reliance upon a presentence report containing financial and employment information is "adequate to al-

low the trial court to make an informed and fair decision as to the amount of restitution to be paid...." *Mitchell v. State* (1990), 4th Dist.Ind.App., 559 N.E.2d 313, 315, *trans. denied.*

The order of restitution is a matter within the trial court's discretion. In *Mitchell,* this court noted that "[i]mposition of restitution is a form of punishment and although it may cause some hardship, the trial court has discretion to determine the extent of the hardship and whether the defendant can still subsist after the payments." *Id.* at 315.

In this case, the trial judge properly held a restitution hearing. Moreover, the record indicates that the trial judge considered Savage's ability to pay in reaching her decision, relying both upon testimony and upon presentence materials prepared by Savage and the probation office.[15] The presentence materials provided the trial judge with, *inter alia,* Savage's family history, marital history, educational background, work history, health status, employment status, and financial information. Therefore, I would conclude that the ordered restitution is not manifestly unreasonable, and that the trial judge did not abuse her discretion in arriving at the amount of restitution ordered in this case.

In my view, the trial judge did, however, abuse her discretion with regard to the manner of payment. In *Maxwell v. State* (1983) 3d Dist.Ind.App., 455 N.E.2d 1171, a defendant appealed the trial court's order of restitution, arguing that the trial court abused its discretion in failing to order the manner of payment.[16] There, we held that the trial court abused its discretion in failing to fix the manner of performance, noting that "although the record does not indicate that the court considered Maxwell's ability to pay, we cannot say the record shows the amount imposed to be an improper choice *so long as*

---

**15.** The restitution order itself reads as follows: "Based upon the pre-sentence investigation and evidence presented at the sentencing hearing on this matter...." Supp.Record at 1. The trial judge also considered the testimony of the injured passenger.

**16.** The statute in effect and at issue at the time of *Maxwell* was I.C. 35–7–2–1(a)(5), which provided, in relevant part, as follows: "[A]s conditions of probation, the court may require that the

person: ... (5) make restitution or reparation to the victim of his crime for the damage or injury that was sustained (When a restitution or reparation is a condition of the sentence, the court shall fix the amount thereof, which may not exceed an amount the person can or will be able to pay, and shall fix the manner of performance.)". 455 N.E.2d at 1175 (quoting statute). This language is identical to that now codified at I.C. 35–38–2–2.3(a)(5).

*Maxwell is not required to pay any significant percentage of the total in any one payment." Id.* at 1176 (emphasis in original). In *Maxwell,* we further indicated that "[t]he purpose of restitution is to make reparation to the victim and to give the defendant an alternative to jail. This purpose is defeated if the restitution is potentially impossible as it is where a person of [modest] means is ordered to pay [$1,234.00] with no payment breakdown." *Id.*

Here, the trial court ordered as follows: "IT IS ORDERED, ADJUDGED AND DECREED that the defendant, Delbert Savage, pay restitution in the amount of $164,998.59 to Indiana Family and Social Services Administration on behalf of Medicaid through the Marion County Probation Office or directly through the United States Mail." Supp.Record at 1. I would find that the manner of payment principles enunciated in *Maxwell* apply to this case. Given Savage's financial situation, it is clear that he cannot make a lump sum payment of $164,998.52. Accordingly, merely specifying payment either through the probation office or via U.S. Mail is insufficient to satisfy the statutory requirement that the court fix the proper manner of payment. The trial court's order does not establish any type of payment plan or payment schedule, nor does it specify whether Savage must make a lump sum payment.

The majority accurately observes that, based upon past employment and even upon current employment prospects, Savage will never be able to pay the full amount. However, I am of the view that it is inappropriate to relieve him, as a matter of law, from an equitable obligation brought about by his own misconduct. It is possible, even though not probable, that in the future Savage may improve his marketable work skills. If that event does not occur or, if his financial ability varies from time to time, periodic review of his restitution obligation may be sought. In so stating, I would note that despite the heavy financial burden placed upon Savage by the trial court, he may not be made to suffer sanctions or punishment for inability to pay. He may be sanctioned only for a willful refusal to pay what he is able to pay.